HENRY D. DEMENT *et al.*

*v.*

HENRY W. ROKKER *et al.*

*Filed at Springfield November 14, 1888.*

1. SUPREME COURT—*its jurisdiction—under existing legislation—the Appellate Court act, and the Practice act.* The act of June 6, 1887, entitled "An act to amend section 8 of an act entitled 'An act to establish Appellate Courts,' approved June 2, 1877," does not affect the jurisdiction of the Supreme Court, and if it had attempted to do so, it would, in that respect, have been void, since its title relates only to the Appellate Courts.

2. The jurisdiction of the Supreme Court is defined by sections 88, 89 and 90 of the "Act to amend an act entitled 'An act in regard to practice in courts of record,'" which took effect July 1, 1877, and subsequent acts amendatory thereof; and the act of June 6, 1887, does not profess to repeal any portion of that act, or any act amendatory thereof, and it does not, in terms, refer to it, nor does it assume to revise it, or to re-enact any pre-existing law covering the same subject matter.

3. APPEAL—*in mandamus.* The Supreme Court has jurisdiction, by appeal or writ of error directly from or to the trial court, to review the judgment of the latter court in a proceeding by *mandamus.*

4. MANDAMUS—*plaintiff must show a clear right.* To entitle a party to the writ of *mandamus,* he must show a clear right to the relief sought. If the right be doubtful, the writ will not be awarded.

5. PLEADING—*in mandamus—as at law.* Under our statute, a *mandamus* proceeding is an action at law, and it is therefore governed by the same rules of pleading that are applicable to other actions at law.

6. SAME—*allegation as to preventing competition at a public letting of contract.* To a petition for a *mandamus* against State officers composing the commissioners of contracts, and others, to compel the payment of money claimed to be due under a printing contract with the State, the defendants answered, alleging that the petitioners and others formed a combination, in the form of a partnership, for the purpose of preventing their competing with each other in bidding for the printing; that the bids were made, and the contract was thereafter entered into, pursuant to that purpose; that the petitioners and one D. paid to several others $1000 as the consideration for their entering into the combination and refraining from competing at the bidding: *Held,* on general demurrer, that the answer, while lacking in precision of statement, was substantially good.

7. DEMURRER—*admits allegations well pleaded.* A demurrer to an answer to a petition for a *mandamus* admits the facts stated in the answer; and when the answer shows the non-joinder of necessary parties plaintiff, a general demurrer thereto will be an admission of that fact.

8. PARTIES—*parties plaintiff—to enforce an obligation to several.* All persons who are partners in a firm at the time a contract is made, must, unless there be a legal excuse for not joining them, be joined in an action to enforce its payment. If a partner be dead, etc., the plaintiff suing must allege it as an excuse for not joining him.

9. In a proceeding by *mandamus* to compel certain State officers to settle and pay money on a contract with the petitioners, it is necessary to make all the persons originally interested in the contract as partners, parties to the suit. A portion of the partners can not maintain the suit in the firm name, nor can they maintain the proceeding omitting one of the partners, by alleging that he has sold his interest in the contract to another one of the firm.

10. So a writ of *mandamus* will not be awarded to enforce a private right, where parties are shown to have a legal interest in the right or contract sought to be enforced, who are not before the court, and whose rights would be collaterally determined by the judgment prayed for.

11. SAME—*non-joinder of necessary parties—how availed of.* In all cases of actions upon contracts, if it appear upon the face of the pleadings that there are other obligees, covenantees or parties to the contract, who ought to be, but are not, joined as plaintiffs in the action, the omission is fatal on demurrer, or on motion in arrest of judgment, or on error; and if the ground of objection does not appear on the face of the pleadings, the defendant may avail of it, either by plea in abatement or as a ground of non-suit on the trial,—as, a variance upon *non est factum,* if the action be upon a specialty, or if it be upon any other contract, upon the plea of the general issue.

12. STATE CONTRACTS—*presumption as to legality—distinction in that regard between contracts for the public, and those which are private.* There is a distinction between contracts where the parties have an inherent right to contract, and contracts where there is no inherent power to contract, but the contract is purely by virtue of a special statutory authority. In the former, the contract is presumed to be lawful, and it devolves upon those who deny its validity to show that it is unlawful; while in the latter instance the reverse is true. The burden rests on those seeking to enforce it, to show that the contract is within the statutory authority.

13. SAME—*State printing contracts—powers of the board—competition must not be obstructed.* Where certain State officers are by statute constituted a special board to enter into contracts for printing for the State, with the lowest responsible bidders, upon a proper letting, such officers will have no power to act except in the manner provided for by the law,

and all persons dealing with such board will be charged with notice of the extent and limitations upon their powers. The law requires that every prerequisite to the exercise of the power shall precede such exercise, in the order and manner directed.

14. It is a condition precedent to the power of the State Board of Contracts to contract so as to bind the State, that there shall be a public letting of the work, in which there is entire freedom of competition, and that the person with whom they contract is the lowest responsible bidder. The board may, however, reject the lowest bid when the bidder is not responsible.

15. The law authorized certain State officers to let contracts for certain work to be done for the State, to the lowest responsible bidder. If, under such law, a contract is let to parties in violation of its provisions, the contract will be void, and no recovery can be had under it. So if the successful bidder has secured a contract by means of an unlawful conspiracy to prevent competition in bidding, the contract will be void. No one can derive any rights under a contract procured by the preventing, on his part, of competition in bidding,—and this applies with like force to public as well as private contracts.

16. Letting by contract to the lowest responsible bidder, implies equal opportunity and freedom in all whose inclination or interests may incite them to bid; and no one can claim to be the lowest bidder when others are kept from bidding by an arbitrary arrangement to prevent competition.

17. SAME—*of the statute relating to the letting of State contracts— construction—prohibitory of preventing competition.* The statute providing for the letting of State contracts to the lowest responsible bidder, and the section thereof denouncing a punishment on those preventing public competition, and the section of the Criminal Code on the same subject, are to be construed as *in pari materia,* as they relate to the same subject.

18. A statute imposing imprisonment in the penitentiary upon any one who shall do an act to prevent freedom of competition at the bidding for State contracts, is equivalent to a direct prohibition of the denounced acts, and if the guilty party has the contract awarded to him it will be void.

19. STATUTE—*when mandatory.* When the provision of a statute is the essence of the thing required to be done, and by which jurisdiction to do it is obtained, it will be held to be mandatory, and not merely directory.

20. ESTOPPEL—*never applied to the State.* The State is never estopped, as an individual or private corporation may be, on the ground that its agent is acting under an apparent authority which is not real, the conclusive presumption that his powers are known, rendering such a consequence impossible.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This was a proceeding in *mandamus*, in the circuit court of Sangamon county, upon the petition of Henry W. Rokker, Thomas Rees and Charles T. Strattan, partners, under the firm name of H. W. Rokker & Co., against Henry D. Dement, Charles P. Swigert, John R. Tanner and George Hunt, Commissioners of State Contracts, and also Charles P. Swigert as Auditor of Public Accounts.

It is, in substance, alleged in the petition, that on the 13th day of September, 1886, the firm of H. W. Rokker & Co., then composed of the petitioners and one Clarence H. Davenport, entered into contract with the People of the State of Illinois, by the Commissioners of State Contracts, under and by virtue of the laws of the State of Illinois, to-wit, "An act to revise the law in relation to State contracts," approved March 31, 1874, in force July 1, 1874, and the several acts amendatory thereof, for the public printing of the State of Illinois for the two years from October 1, 1886, to September 30, 1888, designated by the laws of Illinois as printing of the first, second, third, fourth, fifth and sixth classes, but which said contracts were by said Commissioners of State Contracts required to be dated as of the 7th day of September, 1886. They further show, that after the execution and filing of said contracts, to-wit, on September 23, 1886, one of said partners, to-wit, Clarence H. Davenport, sold and assigned all his interest in each of said contracts to his co-partner, Henry W. Rokker, of which sale and assignment said Commissioners of State Contracts then and there had notice; that upon the said execution of said contracts for said six classes of printing, said firm of H. W. Rokker & Co. executed and filed with the Secretary of State of Illinois, as required by law, their obligations, with sufficient surety, approved by the Governor, for the faithful performance of all said contracts, the amount of said bonds

12—126 ILL.

aggregating $27,000. They further show, that the petitioners entered upon the execution and performance of said printing contracts, to-wit, on October 1, 1886, and from thence hitherto, and until the filing of this petition, have fully and faithfully executed and performed, all and singular, the agreements and undertakings on their part undertaken and agreed in said printing contracts, and in accordance with the laws of the State of Illinois in relation thereto; that between the 12th day of January, 1887, and the 21st day of April, 1887, there were delivered to petitioners, through the Secretary of State, as required by law, 1194 several orders for public printing of the first class, in and by which said orders petitioners were required, under the law and their said contract for said first class of printing, to execute and perform, aggregating in amount, according to the conditions of the said contract, the sum of $6916.20; that petitioners did execute and perform the work specified in said several orders, according to law and their said contract, and the work so executed at the several dates thereof was by petitioners delivered to the Secretary of State, at the State capitol, and accepted by him, and the same was appropriated, used and consumed by the various State departments and agencies; that between the 14th day of October, 1886, and April 22, 1887, there were delivered to petitioners, through the Secretary of State, as required by law, 675 several orders for public printing of the sixth class, in and by which said orders petitioners were required, under the law and their said contract for said sixth class of printing, to execute and perform, aggregating in amount, according to the conditions of said contract, the sum of $8443.35; that petitioners did execute and perform the work specified in said several orders according to law and their said contract, and the work so executed at the several dates thereof was by petitioners delivered to the Secretary of State, at the State capitol, and the same was accepted by him, and appropriated, used and consumed by the various State departments and agencies; that between

December 20, 1886, and April 14, 1887, there were, by the
Secretary of State, as required by law, delivered to petitioners
46 several orders for public printing of the second class, in
and by which said orders petitioners were required, under the
law and their said contract for the second class of printing, to
execute and perform, aggregating in amount, according to the
conditions of said contract, the sum of $17,362.56; that peti-
tioners did execute and perform the work specified in the said
several orders, according to law and their said contract, and
the work so executed at the several dates thereof was by peti-
tioners delivered to the Secretary of State, at the State capitol,
and the same was accepted by him, and appropriated, used
and consumed by the various State departments and agencies.
They further show that said several amounts for the work
executed and performed, and accepted, under said contracts
for public printing of the

| | |
|---|---|
| First class amounted to - - - - - - - | $6,916.20 |
| Second class amounted to - - - - - | 17,362.56 |
| Sixth class amounted to - - - - - - | 8,443.35 |
| Aggregating the sum of - - - - - | $32,722.11 |
| But that prior to May 1, 1887, said Commission-<br>ers of State Contracts had caused to be certified<br>to the Auditor, and so paid on account thereof,<br>the sum of - - - - - - - - - | 24,000.00 |
| Leaving unpaid the sum of - - - | $8,722.11 |

They further show, that on May 7, 1887, the petitioners
presented the detailed, itemized statement and accounts of the
orders for public printing, and by petitioners executed and
performed, heretofore herein referred to, to the Secretary of
State, who then required the printer expert of the State of Illi-
nois to examine and compare the same with petitioners' said
contracts, and the vouchers and orders relating thereto, as re-
quired by law; that said statements and accounts were then
received by said printer expert, and the same were by him

examined and compared, as required by law, and the same being found correct, were by said printer expert so certified to said Commissioners of State Contracts,—and which original certificate is here exhibited, viz:

"STATE OF ILLINOIS, DR.

*To H. W. Rokker & Co.*

RECAPITULATION.

| | | |
|---|---|---:|
| Class 1 | - - - - - - - - - - - | $6,916.20 |
| " 2 | - - - - - - - - - - | 17,362.56 |
| " 6 | - - - - - - - - - - | 8,443.35 |
| | | $32,722.11 |
| By cash | - - - - - - - - | 24,000.00 |
| | | $8,722.11 |

"The foregoing aggregate charges in classes 1, 2 and 6 agree with my books, and are correct, to the best of my knowledge and belief.          JNO. C. HUGHES, *Printer Expert.*"

They further show, that on said day, to-wit, May 7, 1887, and after said accounts of petitioners had been so certified to be correct by said printer expert, said Commissioners of State Contracts examined said accounts, and compared them with petitioners' said contracts for first, second and sixth classes, and with the vouchers and orders relating thereto, and then and there found said accounts to be correct; that on the same day, to-wit, May 7, 1887, the unexpended balance of the appropriation for printing then being in the treasury of the State of Illinois, was $9172.05, and which unexpended balance of said appropriation was then, and is now, available, under the law, for the payment of the orders for public printing so made and delivered as aforesaid, and so executed and performed by petitioners as aforesaid, and so represented and shown by petitioners' said accounts so certified by said printer expert, and so found by said Commissioners of State Contracts to be correct, as aforesaid; that on the same day, to-wit, May 7, 1887,

petitioners demanded of said Commissioners of State Contracts that they certify petitioners' said accounts to the Auditor of Public Accounts of the State of Illinois, as said Commissioners of State Contracts were then and there, under the law and practice in such case, bound and required to do, that thereupon the said Auditor might draw his warrant for the said $8722.11, unpaid balance of said accounts, and in favor of petitioners, as said Auditor, on such certificate, was then and there ready and willing to do, yet said Commissioners of State Contracts then wrongfully and unlawfully refused, and still do refuse, to so certify said accounts to said Auditor, as by law it was and is their duty to do, by means whereof the petitioners are prevented from receiving payment, out of the moneys appropriated, and then and now lying and being in the State treasury, for public printing, of the unpaid balance of $8722.11 due the petitioners on their said correct accounts, and to which they are justly and lawfully entitled; wherefore petitioners pray a writ of *mandamus*, directed to Henry D. Dement, Secretary of State; George Hunt, Attorney General; Charles P. Swigert, Auditor of Public Accounts; and John R. Tanner, State Treasurer, Commissioners of State Contracts of the State of Illinois, commanding them, as Commissioners of State Contracts, to forthwith certify petitioners' said accounts to the Auditor of Public Accounts of the State of Illinois, as corrected, and payable from the appropriation for public printing, and commanding said Charles P. Swigert, Auditor, etc., to then forthwith draw his warrant, in petitioners' favor, upon said John R. Tanner, Treasurer, etc., for said $8722.11, payable out of said appropriation, and commanding said Treasurer to then pay the same to petitioners, etc.

The defendants answered, that they, by virtue of their respective offices, constitute the Commissioners of State Contracts of the State of Illinois; that on or about the 5th day of July, 1886, the Commissioners of State Contracts caused advertisements to be published, as required by law, asking for bids for

doing the several classes of printing required to be done for the State of Illinois for the term of two years, beginning the 1st day of October, 1886,—all said bids to be filed with the Secretary of State on or before the 6th day of September, 1886, and to be opened and the contracts awarded to the lowest and best bidder having complied with the law, on the 7th day of September, 1886. Defendants admit that bids were filed by H. W. Rokker & Co. for doing the several classes of printing for the State for the two years beginning October 1, 1886, which bids for doing the first, second and sixth classes of printing were the lowest and best bids received in compliance with the law, and said bids were accepted, and the contracts for doing the said first, second and sixth classes of printing were awarded to said H. W. Rokker & Co., and in pursuance thereof, on the 13th day of September, 1886, contracts were signed by the Commissioners of State Contracts, and petitioners, with one Clarence H. Davenport, under the name of H. W. Rokker & Co., for doing said first, second and sixth classes of printing for the term of two years, beginning October 1, 1886. Defendants admit that bonds were executed, as required by law, to the amount of $27,000, conditioned for the faithful performance of the said contracts by said H. W. Rokker & Co. Defendants neither admit nor deny that Clarence H. Davenport sold his interest to Henry W. Rokker, or that he at any time owned one-fourth interest in the contract, but require strict proof. Defendants admit that H. W. Rokker & Co. entered upon the performance of the contracts, and did work thereunder to the amount of $32,722.11, at the rates specified in the contracts; that the sum of $24,000 has been allowed and paid thereon; also, that there is in the State treasury an unexpended balance of $9172.05, appropriated by the General Assembly for the payment of printing done within two years, ending June 30, 1887; that petitioners have presented their account, and demanded that the defendants, as Commissioners of State Contracts, certify the same to the State Auditor

of Public Accounts for payment, and that defendants have re-fused to so certify the same. Defendants, further answering, say, that on or about the 6th day of September, 1886, Henry W. Rokker, Fred Gehring, Phillips Bros., (including D. L. and J. L. Phillips,) Frank Hudson, Jr., Thomas S. Pinckard, Thomas W. S. Kidd, Charles Edwards, Clarence H. Davenport, Thomas Rees and Charles T. Strattan, formed a combination for the purpose of making bids for the several classes of printing to be done for the State of Illinois for the two years beginning October 1, 1886, in accordance with the terms of the advertisement hereinbefore referred to, which said combination was formed in the form of a partnership, and for the purpose of obtaining the contracts for said printing at a high rate, and at higher rates than could otherwise be obtained, and for the further purpose of preventing the several members of said combination from competing with each other for the contracts for doing the said printing; and it was then agreed by the members of said combination, that bids on behalf of said persons so combining should be made and filed in the office of the Secretary of State, under the name or title of "H. W. Rokker & Co.," for the several classes of printing,—all which matters and things were then, and until after the letting of the contracts referred to, and until after performance of the work for which payment is asked in this proceeding, unknown to the Commissioners of State Contracts, these defendants. Bids were filed in accordance with said agreement, in the name of H. W. Rokker & Co., then constituted as last aforesaid, for doing the several classes of printing for the two years beginning October 1, 1886, and the contracts for doing the first, second and sixth classes of printing were awarded to the said H. W. Rokker & Co., upon said bids; and as a part of and in pursuance of the agreement under and by which said combination or partnership was formed, and before the execution of the contract, set forth in the petition in this case, the petitioners herein, and said C. H. Davenport, paid to each of the

other members of said combination, namely, Fred Gehring, Frank Hudson, Jr., Phillips Bros., T. W. S. Kidd, Charles Edwards and Thomas S. Pinckard, a large sum of money, to-wit, $1000, in consideration of their becoming members of said combination or partnership, and refraining from competing for the said several classes of printing, and in aiding the petitioners herein, and the said C. H. Davenport, to obtain such contract, and for no other consideration. Defendants aver that the said persons named above as constituting the firm of H. W. Rokker & Co., as last aforesaid, represented and included substantially all persons and firms or organizations in the city of Springfield who were engaged in the business of job printing, or who had facilities for doing the said several classes of printing, and included all persons in or out of the city of Springfield known to these petitioners to be likely to make bids for doing the several classes of printing. These defendants then had no knowledge as to who constituted the firm of H. W. Rokker & Co., and various members of the said firm or combination, namely, Fred Gehring, Charles Edwards, (using the name of the Shober & Carqueville Lithographing Co.,) Frank Hudson, Jr., and Phillips Bros., (composed of D. L. and J. L. Phillips,) separately filed bids for the same classes of printing included in the bids of H. W. Rokker & Co., all of which bids were at higher rates than the bids of H. W. Rokker & Co., except the bid of Fred Gehring, which was irregular in form, and not in compliance with law, so that the same could not be accepted, and were made and filed for the purpose of deceiving and misleading the Commissioners of State Contracts. By the filing of separate bids, as aforesaid, the commissioners were deceived, and wrongfully led to believe that the said several bidders were in competition with each other and with H. W. Rokker & Co., while, in fact, all were interested in and parties to the bids of H. W. Rokker & Co., and thereby the Commissioners of State Contracts, these defendants, were misled, and unlawfully induced to award the

contracts for doing the first, second and sixth classes of printing to H. W. Rokker & Co., and subsequently to make and execute contracts for the same with these petitioners and said Clarence H. Davenport,—these defendants then understanding and being led to believe by these petitioners and the persons so combining with them, as aforesaid, that the petitioners and C. H. Davenport were the same persons represented and included under the style and title of H. W. Rokker & Co., in the bids filed for the several classes of printing, as aforesaid, which are the same contracts referred to and relied on in the petition for the writ of *mandamus* filed therein. Defendants aver that the said combination was formed in violation of the laws of the State of Illinois, and the contracts relied upon by the petitioners were procured by unlawful means, and by fraud upon the part of these petitioners, and through violation of law; and defendants further aver, that the said alleged contracts are null and void, and the same are of no binding force or effect upon the People of the State of Illinois or these Commissioners of State Contracts, and no further payment ought to be made to these petitioners, or any other persons, by reason or on account thereof; wherefore the defendants pray judgment of the court here, whether the petitioners ought to have a writ of *mandamus* in this behalf, and that they, the defendants, be hence dismissed, with their costs, etc.

The petitioners demurred to the answer, and the court sustained the demurrer, and thereupon gave judgment that the writ of *mandamus* issue as prayed. This writ of error is to bring in review that judgment, and the errors assigned bring before the court the questions discussed in the opinion.

Mr. GEORGE HUNT, Attorney General, for the plaintiffs in error:

The Commissioners of State Contracts have no inherent power to make contracts, or to bind the State, except by making such contracts as authorized by the statute, and in the

manner prescribed. The constitution (sec. 25, art. 4,) says, that all State printing shall be let to the lowest responsible bidder. The law passed to carry this provision into effect was designed to permit and encourage competition in bidding. If a person obtains a contract by preventing competition, he does not obtain it in accordance with the terms of the statute, and he can not enforce it. *Paw* v. *Trustees,* 72 N. Y. 463.

When a contract is made for doing a thing prohibited by law, the courts will not aid in its enforcement. *Pope* v. *Linn,* 50 Maine, 84; *Nolton* v. *Congress Co.* 14 Blatchf. 364; *Spring Valley* v. *Nolton,* 103 U. S. 49.

And this is so, though there are no probibitory words in the statute. "*The Pioneer,*" Deady, 72; *Dillon* v. *Allen,* 46 Iowa, 299; *Penn* v. *Bornman,* 102 Ill. 523; *Assurance Co.* v. *Rosenthal,* 55 id. 85; *Village of Dwight* v. *Palmer,* 74 id. 295; *Law* v. *People,* 87 id. 385; *Fridley* v. *Bowen,* id. 151; *Fuller* v. *Chicago,* 89 id. 282; *Smith* v. *Beam,* 15 N. H. 577; *Wheeler* v. *Russell,* 17 Mass. 258.

No right of action arises in a transaction prohibited by law. *McQuade* v. *Rosecrans,* 36 Ohio St. 442; *Musser's Exr.* v. *Chase,* 29 id. 577.

That a contract made in violation of a statutory prohibition is void, is not controverted, and that the infliction of a penalty for the commission of an act is equivalent to an express prohibition of such act, seems to be settled by a great weight of authority. *Bloom* v. *Richards,* 2 Ohio St. 387; *Solomon* v. *Dreschler,* 4 Minn. 278.

Whatever is done in fraud of a law is done in violation of it. "*The William King,*" 2 Wheat. 148; *Lee* v. *Lee,* 8 id. 44.

The courts, from public considerations, refuse their aid to enforce obligations which contravene the laws or policy of the State. *Canal Co.* v. *Vallette,* 21 How. 414.

If the unlawful character of the combination by the bidders permeated the contracts made in pursuance thereof, so as to taint them with fraud, and render them illegal, then no re-

covery for any work done thereunder can be had, either based upon a *quantum meruit* or the contract price. *Birkett* v. *Chatterton*, 13 R. I. 299.

It is idle to say that the State is morally or equitably bound to pay for the work done, for the petitioners were the first to violate good morals and equity, and thereby to destroy all moral or equitable obligation on the part of the State. Neither a moral nor equitable obligation creates a legal obligation. Neither is it material to inquire whether the public are in fact injured. *Mills* v. *Mills*, 40 N. Y. 545; *Atcheson* v. *Mallon*, 43 id. 147; *Gibbs* v. *Smith*, 115 Mass. 592.

The action being at law, can only be maintained by all the parties to it. The contract made by ten persons (the bidders) can not be enforced by only three of them.

That the combination to prevent competition in bidding will defeat the action, see *Howell* v. *Mills*, 53 N. Y. 322; *Hawley* v. *Cramer*, 4 Cow. 717; *Brackett* v. *Wyman*, 48 N. Y. 667; *Sharp* v. *Wright*, 35 Barb. 236; *Mullaly* v. *Mayer*, 3 Hun, 661; 62 N. Y. 621; *Railroad Co.* v. *Mathers*, 104 Ill. 259.

Messrs. GROSS & BROADWELL, for the defendants in error:

The printing contracts were not void, but only voidable, at the most. 2 Parsons on Contracts, *746; Bishop on Contracts, sec. 470; Addison on Contracts, p. 381, sec. 251; Pollock on Contracts, 7; *Gould* v. *Steinburg*, 84 Ill. 170; *Bartlett* v. *Blaine*, 83 id. 25.

If the contracts were obtained by a combination in violation of the law, the offending parties were bound by them until rescinded by the other party. 2 Parsons on Contracts, *781, 782; Bishop on Contracts, sec. 489; Kerr on Frauds, 48; *Peck* v. *Brewer*, 48 Ill. 55.

The most that can be said of the printing contracts is, that they were voidable at the election of the State. Until such election, they were binding on Rokker & Co. The State could not insist on performance, and then refuse to pay for the ser-

vice.   2 Parsons on Contracts, *770, 776; *Hewitt* v. *Clark,* 91 Ill. 605.

The fact that section 46 of the Criminal Code, and section 9 of the State Contract act, in denouncing the penalties for their violation, fail to declare the contracts void, indicates a clear intention to leave contract rights unaffected.   *Dowell* v. *Applegate,* 7 Fed. Rep. 881; *Bowen* v. *Byrne,* 55 Ill. 467; *Faikney* v. *Raynous,* 1 Burr. 2070; *Petrie* v. *Hannay,* 3 T. R. 418; *Farmer* v. *Russell,* 1 Bos. & Pull. 296; *Niemayer* v. *Wright,* 75 Va. 239; *Thalen* v. *Clark,* 19 Conn. 421; *Johnson* v. *Hudson,* 11 East, 180; *Tenant* v. *Elliott,* 1 Bos. & Pull. 3; *Pratt* v. *Short,* 79 N. Y. 437; *Johnson* v. *Bland,* 2 Burr. 1077; *Strong* v. *Farling,* 9 Ohio, 201; *Bemis* v. *Becker,* 1 Kan. 226; *Armstrong* v. *Toler,* 11 Wheat. 258.

The fact that one member of a union or company makes a fair bid in his own name, or in a common name, for the benefit of all the members, the remaining members abstaining from bidding, is not, in law, a preventing of competition, and no such contract can be avoided as fraudulent, in the absence of averment and proof of injury and damage to the person complaining.   *Phipper* v. *Stickey,* 3 Metc. 384; *Small* v. *Jones,* 1 W. & S. 128; *Good* v. *Hawkins,* 2 Dev. Eq. 393; *Smith* v. *Greenlee,* 2 Dev. Law, 126; *Hamilton* v. *Hamilton,* 2 Rich. Eq. 379; *Piatt* v. *Oliver,* 1 McLean, 295; *Brisben* v. *Brown,* 24 Ohio St. 565; *James* v. *Fulcrod,* 5 Texas, 512; *McMinn* v. *Phipps,* 3 Sneed, 194; *Jenkins* v. *Frink,* 30 Cal. 586; *Smith* v. *Ullman,* 58 Md. 183; *Nat. Bank* v. *Sprague,* 20 N. J. Eq. 159; *Kearney* v. *Taylor,* 15 How. 494; *Marsh* v. *Russell,* 66 N. Y. 288; *Garrett* v. *Moss,* 20 Ill. 549; *Wicker* v. *Hoppock,* 6 Wall. 94; *Marie* v. *Garrison,* 83 N. Y. 14; *Carew's Estate,* 26 Beav. 187; *People* v. *Stephens,* 71 N. Y. 527.

The averments of the answer do not bring the case within the statute.   Fraud being a conclusion of law, it is incumbent on one who wishes to set it up by way of defense, to state the

facts relied on as constituting the fraud. *Roth* v. *Roth,* 104 Ill. 35; *Railway Co.* v. *People,* 119 id. 182.

Damage must be shown to have resulted from the fraud, to affect the contract. 1 Benjamin on Sales, 555; *Bartlett* v. *Blaine,* 83 Ill. 25; *Bell* v. *Johnson,* 111 id. 374; Bigelow on Fraud, 500; Bishop on Contracts, sec. 653; 2 Parsons on Contracts, *770; *Dick* v. *Cooper,* 24 Pa. St. 217.

Before a party can rescind a contract for fraud, he must put the other party *in statute quo.* Bigelow on Fraud, 408-412; 2 Parsons on Contracts, *781, 782; *Elder* v. *Sabin,* 66 Ill. 126; *Harzfeld* v. *Converse,* 105 id. 534; *Insurance Co.* v. *Botto,* 47 id. 516; *Underwood* v. *West,* 52 id. 397; *Harding* v. *Parshall,* 56 id. 219; *Dowden* v. *Wilson,* 108 id. 257; *Smith* v. *Brittenham,* 98 id. 188; *Kelsey* v. *Snyder,* 118 id. 544; *Phillips* v. *South Park Comrs.* 119 id. 626; *Doane* v. *Lockwood,* 115 id. 490; *Smith* v. *Brittenham,* 109 id. 540.

The rule as laid down in the books is, that any party is entitled to the benefit of the writ of *mandamus,* who, by proper pleadings, makes it appear that the defendant refuses to perform a duty in the performance of which the petitioner is interested, and by the non-performance of which he would be injured. 4 Wait's Actions and Defences, p. 360; *County of Pike* v. *State,* 11 Ill. 202; *City of Ottawa* v. *People,* 48 id. 233.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

When this case was first considered by us, we entertained some doubts whether we were not denied jurisdiction to render judgment in it, by the provisions of an act approved June 6, 1887, entitled "An act to amend section 8 of an act entitled 'An act to establish Appellate Courts,' approved June 2, 1877," (Laws of 1887, p. 156,) and we therefore invited discussion, in writing, by the counsel upon the respective sides, upon that question. In response to that invitation, the question was thoroughly discussed, in writing, by the respective counsel;

and, aided by that discussion, we have now carefully considered the question; and, having done so, we have come to the conclusion that our former doubts were not well founded, and that our jurisdiction is unaffected by the act of the 6th of June, 1887. That act is limited, both by its title and by its subject matter, to Appellate Courts. While it is true that the name of this court occurs in the body of the act, it does so incidentally, only, and in an explanatory sense, and not as having its jurisdiction thereby contracted. But if the body of the act assumed to affect the jurisdiction of this court, it is clear that so much of it would be unconstitutional and void, since the title of the act only relates to Appellate Courts, and section 13, of article 4, of the constitution, provides, that "if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void * * * as to so much thereof as shall not be so expressed." The jurisdiction of this court is defined by the 88th, 89th and 90th sections of the "Act to amend an act entitled 'An act in regard to practice in courts of record,'" etc., which took effect July 1, 1877, and subsequent statutes amendatory thereof. And the act of June 6, 1887, not only does not profess to repeal any portion of that act, or of any act amendatory thereof, but it does not, in terms, refer to it; nor does it assume to revise it, or to re-enact law covering the same subject matter.

Under our statute, a *mandamus* proceeding is an action at law, and it is therefore governed by the same rules of pleading that are applicable to other actions at law. (Rev. Stat. 1874, chap. 87, sec. 1,—2 Starr & Curtis, 1584; *People* v. *Glann*, 70 Ill. 232.) Hence, when the petition is to enforce a private right, the petitioner must be the party in interest. (*Pike County* v. *State*, 11 Ill. 202.) Necessarily, therefore, the writ will not be granted when parties are shown to have a legal interest in the contract sought to be enforced who are not before the court, and whose rights will be collaterally determined by the judgment, if rendered as prayed. *People ex rel.* v. *Forquer*, Breese, 104.

All persons who are partners in a firm at the time when a contract is made, must, unless there be a legal excuse for not joining them, be joined in an action to enforce its payment. 1 Chitty's Pl. 12, *13; 2 Wheaton's Selwyn's Nisi Prius, 866, 867; Dicey on Parties, (Truman's notes,) 172, *151. If there be a legal excuse for not joining a partner, as, if he be dead, etc., the plaintiff must allege it. 1 Chitty's Pl. 14, *15; notes to *Cabell* v. *Vaughan,* 1 Saunders, (Williams' notes,) 291 f. And Chitty says, (1 Pleading, 13, *14,): "In all cases of contracts, if it appear upon the face of the pleadings that there are other obligees, covenantees or parties to the contract, who ought to be, but are not, joined as plaintiffs in the action, it is fatal on demurrer, or on motion in arrest of judgment, or on error; and though the objection may not appear on the face of the pleadings, the defendant may avail himself of it, either by plea in abatement or as a ground of non-suit, on the trial,—as, a variance upon *non est factum,* if the action be upon a specialty, or if it be upon any other contract, upon the plea of the general issue." See, also, authorities cited *supra,* and *Armine* v. *Spencer,* 4 Wend. 406; 16 Johns. 34.

The rule is familiar, that to entitle a party to the writ of *mandamus,* he must show a clear right to the relief sought. If the right be doubtful, the writ will not be awarded. *People ex rel.* v. *Trustees of Schools,* 86 Ill. 613; *Brokaw* v. *Commissioners,* 118 id. 239; *Board of Supervisors* v. *People,* id. 459.

This petition is filed by Henry W. Rokker, Thomas Rees and Charles T. Strattan, partners, under the firm name of H. W. Rokker & Co. It alleges, among other things, that "on the 13th of September, 1886, the firm of H. W. Rokker & Co., then composed of the petitioners and one Clarence H. Davenport, entered into a contract with the People of the State of Illinois, etc.; * * * that after the execution and filing of said contract, to-wit, on September 23, 1886, one of said partners, to-wit, Clarence H. Davenport, sold and assigned all his interest in each of said contracts to Henry W. Rokker, of which

sale and assignment said Commissioners of State Contracts then and there had notice." The answer admits that the contracts were made by the Commissioners of State Contracts with the petitioners and Clarence H. Davenport, under the name of H. W. Rokker & Co. There is no opportunity allowed Clarence H. Davenport to say whether the allegation that he sold and assigned his interest in the contracts to Henry W. Rokker, is true, and therefore, if, to-day, Rokker, Rees and Strattan may have a judgment that the money due on these alleged contracts be paid to them, why may Davenport, to-morrow, not have a judgment that precisely the same money be paid to him? A majority of partners have no more right to appropriate a partnership name to their use than a single partner has the right to appropriate it to his use; and so it would be just as lawful for Clarence H. Davenport to file a petition to enforce these contracts in his name, alleging that Rokker, Rees and Strattan had sold and assigned their interests to him, as it is for these petitioners to proceed as they do. The State has no interest in the subsequent contract between the partners, and it can not be involved in any controversies that may arise thereupon between them. Its contracts, if with anybody, were with all the partners, and the question of its liability must be adjudicated with all, and it is therefore not bound to answer a part, only.

It is also further, in substance, alleged, in the answer, that on or about the 6th day of September, 1886, Henry W. Rokker, Fred Gehring, Phillips Bros., (including D. L. and J. L. Phillips,) Frank Hudson, Jr., Thomas S. Pinckard, Thomas W. S. Kidd, Charles Edwards, Clarence H. Davenport, Thomas Rees, and Charles T. Strattan, formed a combination, in the form of a partnership, under the firm name of H. W. Rokker & Co., and that the contracts here sought to be enforced, were, in fact, made by all these persons, under the firm name of H. W. Rokker & Co. These allegations are involved with other allegations charging conspiracy, etc., but they are distinct, and their truth is admitted by the demurrer. What has been said

with respect to the omission of Davenport as a party, applies with equal force to the omission of these additional partners. If a part of the members of a firm may allege a contract like those here involved, with themselves alone, omitting the names of the other members of the firm, who were, in fact, also parties to it, and have it enforced for their benefit, it must be obvious that the omitted members of the firm may do precisely the same thing,—and so, to protect the State against a double liability in such cases, it is indispensable, when it is made to appear that those seeking to enforce the contract are only a part of the firm with whom it is made, that relief be denied.

It follows, that, in our opinion, the court below erred in overruling · the demurrer.    Inasmuch, however, as the errors indicated may be obviated by amendments to the pleadings, we deem it advisable to go further, and give our opinion upon other questions that have been discussed in the arguments before us, and which will necessarily arise again upon a trial of the case.

The contracts sought to be enforced assume to be executed, on behalf of the State, by the Secretary of State, Auditor of Public Accounts, Treasurer and Attorney General.    These offices are created by the constitution, but that instrument confers no' power upon the incumbents to act as a corporate or *quasi* corporate body, nor to bind the State by their contracts, as such; and from the nature of the duties devolved upon them separately, it is obvious that the incumbents have no inherent power to act in that respect.    The power, then, claimed by the petitioners to have been exercised by these officers must be a naked power, uncoupled with any interest, and purely statutory.    The rule is, those dealing with persons exercising a special statutory power are charged with knowledge of the statute, and they are bound to know, at their peril, the extent of the power conferred.    *Parr* v. *Village of Greenbush*, 72 N. Y. 463 ;  Bishop on Contracts, (enlarged edition,) sec. 992.

The law requires that every prerequisite to the exercise of such· a power, as stated in the statute, must actually precede

13—126 ILL.

its exercise. (*Williams* v. *Peyton's Lessee*, 4 Wheat. 79.) And on these principles it has been held, that where the charter or incorporating act requires officers of the city to award contracts to the lowest bidder, a contract made in violation of its requirement is illegal, and in an action brought on such contract, for the work, the city may plead its illegality in defense. Dillon on Mun. Corp. (1st ed.) 388, and cases cited in note 1, and *Parr* v. *Village of Greenbush, supra.* And it is manifest, from the language employed, that it is intended by our constitution that this rule shall be rigidly applied to contracts assuming to bind the State, for it provides, (sec. 19, art. 4,) that "the General Assembly shall never * * * authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void."

We must, then, inquire, were these alleged agreements or contracts made "*with express authority of law ?*" And it has just been shown, that in order that this shall be answered in the affirmative, it must appear that each substantial thing required by the law to be done in the making of such agreements or contracts, was done in the manner and order therein required.

It is provided by section 25, of article 4, of the constitution, that "the General Assembly shall provide, by law, that the printing, binding * * * the laws and journals, and all other printing ordered by the General Assembly, shall be let by contract, to the lowest responsible bidder; but the General Assembly shall fix a maximum price. * * * But all such contracts shall be approved by the Governor, and if he disapproves the same, there shall be a re-letting of the contract, in such manner as shall be prescribed by law." The General Assembly, for the purpose of executing this section, enacted a statute, which was approved on the 31st of March, 1874, and which took effect on the 1st day of July of that year.

(Rev. Stat. 1874, p. 993.) The first section declares "that the Attorney General, Secretary of State, the State Treasurer, and the Auditor of Public Accounts, shall be *(ex officio)* Commissioners of State Contracts," and further directs the manner and time of their organization as a board, and the manner of calling meetings, etc. The second section reads thus : "The furnishing of all fuel, stationery and printing paper for the use of the State, and the copying, printing, binding and distributing the laws and journals, reports, and all other printing and distributing ordered by the General Assembly, shall be let by contract, to the lowest responsible bidder, in the manner hereinafter provided." Section 3 directs the way in which advertising for bids shall be made. The fourth section directs how bids shall be made. The fifth section directs that the contract shall be awarded to the lowest bidder, but gives the commissioners power to reject bids, and provides that no contract shall be made without the written approval of the Governor. The ninth section provides that "any person who shall offer or pay to any person any money or other valuable thing, to induce such person to not bid for a State contract, or as a recompense to him for not having bid for such contract, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the penitentiary not longer than three years. Any person who shall accept any money or other valuable thing for not bidding for a State contract, or who shall withhold a bid in consideration of a promise of the payment of money or other valuable thing, shall be guilty of a misdemeanor, and on conviction thereof shall be imprisoned in the penitentiary not longer than three years." The sixteenth section fixes maximum rates, and declares that they are the highest prices which shall be paid for printing, under the act. The twenty-first section provides for the appointing of a printer expert, and defines his duties in aid of the commissioners, etc. The other sections are not thought to have any pertinency to the questions now before us.

"Letting by contract, to the lowest responsible bidder," necessarily implies equal opportunity to and freedom in all whose interests or inclinations might thus impel them to compete at the bidding. No one may be compelled to bid at such a letting, but there must be entire fairness and freedom in competition; and no one can, within the meaning of the provisions of the constitution and statute quoted, claim to be the lowest bidder, where others, who otherwise would have bid, are, by an arbitrary arrangement to prevent competition, kept from bidding. The manifest purpose in requiring the contract to be let to "the lowest responsible bidder," is to protect the State against imposition and extortion; but if contractors may combine and prevent competition by violence, or by buying off competitors, the State will have no protection, and the requirement will be valueless,—a mere dead letter.

It is not claimed that there is constitutional or statutory authority, other than that quoted, whereby power is vested in the Attorney General, Secretary of State, the State Treasurer, and the Auditor of Public Accounts, to make contracts binding the State. It would, therefore, seem clear, that, under the authorities previously referred to, an indispensable condition precedent to their power to contract is, that there shall be a public letting in which there is entire freedom of competition, and that the person with whom they contract was at that letting the lowest responsible bidder. A lower bid might, undoubtedly, be rejected by the commissioners for the reason that the bidder is not responsible, for in this respect they have to exercise an independent judgment; but in respect to the letting they can only do what the statute says. They can no more contract with one who is not the lowest responsible bidder, than they can contract without advertising for bids.

That the letting must be one at which there shall be entire freedom in competition, is placed beyond doubt by the provisions of the ninth section of the act *ut supra,* by which, we have seen, it is made a misdemeanor, punishable by confine-

o

ment in the penitentiary, for any person to pay, or offer to pay, money or other valuable thing to another to induce him not to bid for a State contract, or as a recompense to him for not having bid for such contract, or for any person to accept money or other valuable thing for not bidding for a State contract; and by the 46th section of the Criminal Code, (Rev. Stat. 1874, p. 358,) whereby it is among other things enacted, that "if any two or more persons conspire and agree together * * * to prevent competition in the letting of any contract by the State, * * * or to induce any person not to enter into such competition, * * * they shall be deemed guilty of conspiracy, and every such offender * * * shall be imprisoned in the penitentiary," etc.

Counsel for defendants in error, however, contend, that inasmuch as these sections do not expressly declare that contracts made in violation of their provisions shall be void, and as the penalties which they declare are not on the making of such contracts, but on the persons doing the things prohibited, they can not be resorted to for the purpose of establishing the invalidity of these contracts. It is, in considering this contention, pertinent to keep in mind the distinction between contracts where the contracting parties have an inherent power to contract, and contracts where, as here, there is no inherent power to contract, but the contract is purely by virtue of a special statutory authority. In the former instance, the contract is presumed to be lawful, and it devolves upon those who claim its invalidity to show that it is unlawful. But in the latter instance, as we have heretofore shown, precisely the reverse is held. The burden there is upon those seeking to enforce the contract to show that it is within the statutory authority. It is, therefore, not upon these plaintiffs in error, in the first instance, to establish the invalidity of these contracts, but upon defendants in error to establish their validity,—in doing which, as we have seen, an indispensable step is, that they were the lowest responsible bidders. These sections, under a familiar

rule of construction, must be construed as *in pari materia* with the other sections of the statute referred to *supra.* They impose severe and degrading penalties upon those who do the designated acts to prevent freedom of competition at the bidding. The imposing of such penalties is now construed as equivalent to a prohibition of the denounced acts, although it may have been formerly held otherwise. Metcalf on Contracts, p. 258; Pollock's Principles of Contracts, (Wald's ed.) p. 261; Wharton on Contracts, sec. 365. And so we must read the language requiring that the letting shall be to the lowest responsible bidder, as followed and explained by the language of these sections, as prohibiting, at the bidding, the things for the doing of which the penalties are imposed, and hence, if that which is thus prohibited was done, the letting was necessarily void. (See authorities *supra.*) A party can not be entitled to enforce an agreement which he induced the adverse party to enter into, only by doing that which subjected him to punishment by confinement in the penitentiary. No case decided in recent times goes to that extent. Greenhood on Public .Policy, rule 471, p. 546.

We entirely concur with counsel for defendants in error, that the mere formation of partnerships for the purpose of obtaining contracts under this statute, is not necessarily prohibited; but such partnerships must be formed in good faith, for the more convenient and successful doing of the particular work or carrying on of the particular business to which they are devoted, and not for the purpose of preventing competition in bidding. All of the authorities are in substantial accord that no one can derive rights under a contract made for the purpose of preventing competition in bidding. *Hamilton* v. *Hamilton,* 2 Rich. Eq. 355; *James* v. *Fulcrod,* 5 Texas, 512; *Dudley* v. *Little,* 2 Ohio, 504; *Jones* v. *Caswell,* 3 Johns. Cas. 29; *Thomson* v. *Daviess,* 13 id. 112; *Gibbs* v. *Smith,* 115 Mass. 592; 1 Story's Eq. Jur. sec. 293. And this applies with like force to public as to private contracts. (*Weld* v. *Lancaster,* 56 Me. 453; *Swan*

v. *Chorpenning,* 20 Cal. 182 ; Greenhood on Public Policy, rule 175, p. 183.) It may sometimes be difficult to ascertain the motives controlling in the formation of the partnership; but this affects only the question of fact in the particular case.

An argument is sought to be drawn against the necessity of a strict observance of the requirement that the contract shall be let to the lowest responsible bidder, from the facts that the statute also requires that no contract shall be made without the written approval of the Governor; that maximum rates are fixed in the statute, and that the bidding is to be supervised by an expert printer, etc.; and that, from the nature of the case, if the bidding was supervised by the expert, the amount bid was less than the maximum rate, and the contracts were approved by the Governor, the State should be concluded. But the statute merely directs these as successive steps in the execution of the contracts, and makes no provision that either or all shall be conclusive. Plainly, they are intended as distinct and successive safeguards to protect the State against imposition and extortion. Where the provision of the statute is the *essence* of the thing required to be done, and by which jurisdiction to do it is obtained, it is held to be *mandatory.* *Rex* v. *Locksdale,* 1 Burr. 447 ; *Marshall* v. *Langworthy,* 6 Hill, 646 ; *Stuker* v. *Kelly,* 7 id. 9 ; *People* v. *Schemerhorn,* 19 Barb. 558.

Although the commissioners may have assumed the contracts to be valid, since they were made, and done acts upon the faith of that assumption prejudicial to these defendants in error, if their legality be now denied, the question of the validity of the contracts is still open. "The State is never estopped, as an individual or private corporation may be, on the ground that the agent is acting under an apparent authority which is not real,—the conclusive presumption that his powers are known rendering such a consequence impossible." Bishop on Contracts, (enlarged ed.) sec. 993, and authorities there cited.

It is insisted that the answer is defective in not specifically charging the doing of acts prohibited, which render the con-

tracts void. There is more of generality of statement, and less of precision of specific violation of law, than we could desire; still, on a general demurrer, we are not prepared to hold that the answer should have been held insufficient on this ground. These facts are distinctly alleged, namely: First, that the persons named formed a combination, in the form of a partnership, under the firm name of H. W. Rokker & Co., for the purpose of preventing their competing with each other in bidding for this printing; that the bids were made, and that the contracts were thereafter entered into, pursuant to that purpose; second, that the petitioners and Davenport paid to Gehring, Hudson, Phillips Bros., Kidd, Edwards and Pinckard, $1000, as the consideration of their entering into the combination and refraining from competing at the bidding. The entering into an agreement or contract to not compete in bidding, implies that the parties would have competed but for that agreement or contract. It would clearly be sufficient, under the sections of the statute quoted, to prove, under the one section, the payment of money or other valuable thing to induce a person not to bid; and under the other, to prove that two or more persons agreed with each other that they would not compete at the bidding. The criminal intent would be inferred from the act proved, and the burden would then be upon the party charged to introduce evidence to remove that presumption. So, here, in our opinion, if the facts alleged, as above stated, were proved, the presumption would arise that the parties would otherwise have competed at the bidding, and that they were by those facts prevented from doing so. And we do not perceive why, on a general demurrer, it is indispensable that the allegations in an answer of this kind shall be more specific than the proofs required.

The judgment is reversed, and the cause remanded. Each party will have leave to amend pleadings to correspond with the views herein expressed.

*Judgment reversed.*