RICHARD PARR, JR., Respondent, v. THE PRESIDENT AND TRUSTEES OF THE VILLAGE OF GREENBUSH, Appellants.

Where, by a village charter, its board of trustees are authorized to enter into contracts for work upon its streets, and there is no provision in the charter requiring the contract to be in writing, formally executed, a contract may be made by a simple resolution of the board accepting a proposition, or by a resolution specifying the terms of the contract assented to by the other party.

A contract thus made is not invalid because the clerk of the board fails to record the resolution in his book of minutes.

Where the law requires municipal officers before entering into cotnracts to advertise, and to contract with the lowest bidder, a contract made without complying with these requirements, imposes no obligation upon the municipality.

Defendant's board of trustees passed a resolution to lay a sidewalk on a certain street; plaintiff presented a written proposal for the work. At a regular meeting of the board a written contract for the work was produced, and was signed by all of the trustees but one, and by plaintiff. No official designation or description was attached to the signatures of any of the trustees save to that of the president. The contract recited that it was made by "the President and Trustees of the *Corporation* of Greenbush." The corporate name of the village is "The President and Trustees of the Village of Greenbush." *Held*, that the facts authorized a finding that the contract was made between plaintiff and defendant by the official action of the board.

The contract was made in 1870 ; by it defendant was to furnish "all the necessary sand and gravel and to properly grade the street." The work was to be commenced in May, 1871, and completed without necessary delay. Defendant did not furnish the sand or gravel and did not grade the street. In September, 1873, at a regular meeting of the board, a copy of the contract was produced and resolutions passed requiring plaintiff to go on, and if necessary sand and gravel were not

furnished or grading done, to furnish said materials and do the grading himself. Prior to this, plaintiff had notified defendant to perform, on their part, the said provision of the contract. Plaintiff went on and did the work. By defendant's charter, as amended in 1871 (subd. 23, § 3, title 2, chap, 683, Laws of 1871), it is provided that whenever "the grading or paving of any * * * sidewalk * * * in any of the streets * * * of said village" is authorized by the trustees, it shall be their duty to advertize for proposals and to award the contract to the lowest bidder. In an action to recover for work alleged to have been done under the contract, and for work and materials in pursuance of said resolution, *held*, that the evidence failed to show an abandonment of the contract; and that the same was not affected by the subsequent amendment to the charter; but that the resolution was illegal, and that plaintiff could not recover for the sand, gravel and grading.

Also, *held*, that no recovery could be had therefor upon a *quantum meruit*.

Upon the trial it was claimed on the part of defendant that the contract was not fully performed, and that the work and materials were imperfect and insufficient. On this issue plaintiff offered in evidence a certificate of the street superintendent, to the effect that the work was properly done, and the materials furnished such as were called for; this was received under objection and exception. *Held*, error, as it did not appear that the superintendent was authorized either by the charter or the ordinances of the village, or in any other manner, to give such a certificate.

(Argued January 30, 1878; decided February 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, in favor of plaintiff, entered upon an order denying a motion for a new trial, and directing a judgment upon a verdict.

This action was brought to recover for work alleged to have been done and materials furnished in grading and laying a sidewalk on one of defendant's streets. A portion of the work was claimed to have been done under a contract between the parties executed December 20, 1870. The facts appear sufficiently in the opinion. Exceptions were ordered to be heard at first instance at General Term.

*G. L. Stedman*, for appellant. The alleged contract of December 20, 1870, was invalid. (Laws 1854, chap. 38, §§ 11, 16, p. 814; *Townsend* v. *Corning*, 23 Wend., 435.)

If the alleged contract was ever valid it had been abandoned by the parties thereto, and could not be renewed or revived under the new charter. (Laws of 1871, chap. 683 ; *Jones* v. *Judd*, 4 N. Y., 411 ; *Gallup* v. *Albany Railway*, 65 id., 1, 5.) The work done and material furnished, outside of the alleged contract, was not done under any legal authority from the defendant, and it is not liable therefor. (*Heed* v. *Ins. Co.*, 2 Cranch, 127 ; Dil. on Munc. Corp., § 373, note 1 ; *Bonesteel* v. *Mayor, etc.*, 22 N. Y., 162.) Defendant was not responsible for work done or materials furnished, if contracted for without authority or contrary to the prescribed mode. (*McDonald* v. *Mayor, etc.*, 4 T. & C., 177 ; *Hogan* v. *City of B'klyn* ; Dil. on Munc. Corp., § 373.) The court erred in admitting the certificate of the superintendent of streets, certifying that the work was properly done. (Greenl. on Ev., § 498; *Erickson* v. *Smith*, 38 How. Pr., 454.)

*Henry Smith*, for respondent. The contract having been made by defendant's trustees as such, and repeatedly thereafter recognized, and never having been revoked or in any way attempted to be countermanded, and defendant having received and enjoyed the benefit of the work, and the jury having found it was in compliance with the contract, defendant was liable therefor. (*Hooker* v. *Eagle Bk.*, 33 N. Y., 86; *Nelson* v. *Mayor, etc.*, 63 id., 535, 544; *Messenger* v. *City of Buffalo*, 21 id., 199; *Lee* v. *Pittsburgh, etc.*, 16 Alb. L. J., 33; *Nichols* v. *Moody*, 22 Barb., 611; *Hood* v. *Hallenbeck*, 7 Hun, 362; *Meeker* v. *Cunningham*, 44 N. Y., 349; *Butler* v. *Evening, etc.*, 61 id., 634.) The grading and furnishing of sand by defendant being a condition precedent to plaintiff commencing work under the contact, he had a right to wait until that was done, and was not chargeable with breach of contract or failure to perform until the work was ready for his materials and services under the contract. (*Allamon* v. *Mayor, etc.*, 43 Barb., 33; *Thorp* v. *Ross*, 4 Keyes, 546. The provisions of subdivision 23, section 3, title 2 of chapter

683, Laws of 1871, requiring an advertised letting of any paving or grading, etc., only applied to work thereafter authorized. (*Co. of Moultrie* v. *Bank*, 92 U. S., 631; *County* v. *Foster*, 93 id., 567; *County* v. *Thomas*, 94 id., 682; *N. Y., etc.*, v. *Van Horn*, 57 N. Y., 473; *Benton* v. *Wickwire*, 54 id., 226.) The point that the contract was invalid, because never delivered, was not well taken. (*Argus Co.* v. *City of Albany*, 55 N. Y., 495.) Defendant had a right to allow plaintiff to do the work, and thus cause its prior contract to be complied with without delay, and was liable for damages for a breach thereof. (*Messenger* v. *Buffalo*, 21 N. Y., 196, 198, 199; *Allanson* v. *Mayor, etc.*, 43 Barb., 33; *Thorp* v. *Ross*, 4 Keyes, 546.) The certificate of the superintendent of streets, that the work was properly done, was competent. (1 Whart. on Ev., §§ 35, 36; *Tyler* v. *Flanders*, 57 N. H., 618; *Beach* v. *Bemis*, 107 Mass., 498; *Rawle* v. *Am. Mut., etc.*, 27 N. Y.. 282, 291–293.)

EARL, J. It is not disputed that the board of trustees of the village of Greenbush had authority to make the alleged contract of December 20, 1870. Such authority was conferred by the village charter (Laws of 1854, chap. 383, § 16). It could be made at any meeting of the board regularly convened. There is nothing in the charter which requires that it should be in writing, formally executed by the parties. A simple resolution of the board, accepting the proposition of the other party, could make a contract, or a resolution of the board specifying the terms of the contract assented to by the other party could make a contract; and a contract thus made would not be invalid because the clerk had not recorded the resolution in his book of minutes. The clerk is required to attend the meetings of the trustees and keep and record minutes of their proceedings; but the proceedings are not invalidated because the clerk neglects his duty to record them.

On the 1st of November, 1870, the trustees passed a resolution to lay and flag a brick sidewalk on the west side of

East street, from Partition street to Second avenue.   On the
sixteenth day of December following, the plaintiff made to the
defendants a written proposal, accompanied by a bond to do
the work.   On the twentieth day of December, at a special
meeting of the board of trustees, held at their office, at which
the clerk, president and all the trustees attended, the written
contract of that date, which had before been drawn up by
the president, was produced ; and it was there signed by
the plaintiff and the president and all the trustees but one,
and was left in the hands of one of the trustees.   The con-
tract recited that it was made between "the president and
trustees of the corporation of Greenbush" of the first part,
and Richard Parr, Jr., of the second part, and it provided
for flagging, paving and curbing the west side of East street
from Partition street to Second avenue in said village.   It pro-
vided that the work was to be done under the direction of the
street committee, and that the party of the first part was to
furnish "all the necessary sand and gravel, and to properly
grade the street."   It closed by reciting "in witness whereof
the parties to these presents have hereunto set their hands
and seals; " and then followed the signatures of the presi-
dent and all the trustees but one, and of Parr.   The seals
were the individual seals of the trustees, and no official desig-
nation or description was attached to any name but that of
the president.

It is clear that this was intended to be a contract between
Parr and the village.   The form of the contract and the cir-
cumstances under which it was executed show this.   It was
made at a regular meeting of the board, in pursuance of a
previous proposal by Parr.   It was reduced to writing and
then signed, so that there should be no mistake as to its
terms.   It was perfectly good without any signatures.   The
signatures of the trustees are important only to show that at
that meeting it was assented to by a majority of the trustees.
It is not a case where the plaintiff has to rely upon a written
contract, formally executed, to sustain his action.   If this
contract had been laid down there, and the ayes and noes

had been called upon a resolution to adopt or accept it, it would have been just as valid. And when the names were called, if each trustee had signed his name as a witness of his assent, it would have been in the same condition it is now. From all that took place then and afterward, it was at least a question of fact whether that contract was then and there made between the plaintiff and the board of trustees by the official action of the board. And that question was submitted to the jury, and it cannot now be said that it was not made.

The contract. provided that the work should be commenced in May, 1871, and completed without unnecessary delay. The work was not, in fact, commenced until October, 1873, and it was completed, as claimed by plaintiff, in June, 1874. The long delay in the commencement of the work is not fully explained. There is no evidence that the plaintiff had abandoned the contract or that he was in default in its performance. He could do nothing until the village did the grading and furnished the sand and gravel. This the village never did or offered to do. But some months before he commenced the work he notified the defendants that they should furnish the grade, sand and gravel. Afterward, he notified them to give up his bond or perform, and permit him to perform, his contract. Finally, on the 30th day of September, 1873, at a regular meeting of the trustees, a copy of the contract was produced, and a resolution was adopted, requiring Parr to go on and perform his contract without delay ; and also a resolution " that if the necessary sand and gravel are not furnished, and the proper grading is not done in season for the said Parr to commence the work, that the said Parr is authorized to furnish the sand and gravel and do such grading."

After Parr had finished his work on the 13th day of January, 1874, he presented his bills for payment to the board of trustees. at a regular meeting ; one bill for work, under the contract of December 20, 1870, amounting to $11,006; and three other bills for work, sand and gravel, under the

resolution of September 30, 1873, amounting to $6,283.25. These bills were then referred to the committee on accounts, and at the next meeting, held January 20, 1874, a majority of the committee having reported the bills correct, it was resolved that they be allowed and paid. This action was subsequently commenced.

As before stated there is no evidence that the contract of December 20, 1870, was at any time abandoned with the consent of Parr. But yet the question of abandonment was submitted to the jury, and of that the defendants cannot complain. Upon the trial the defendants claimed that the contract of December, 1870, and the resolution of September, 1873, were the result of fraud practiced by Parr, and of fraud and conspiracy between him and the trustees, or some of them in office at the dates named. It was also claimed that the contract was not fully performed, and that the work and material were very inferior, imperfect and insufficient, and that the trustees in office in January, 1874, accepted the work, and audited and allowed plaintiff's bills by some fraud practiced by plaintiff, or by some fraud and conspiracy between him and some of the trustees. The principal contention at the trial was as to the character of the work done and material furnished in the performance of the contract; and there was much evidence tending to show that the job was very imperfectly performed. Whether it was properly and honestly performed was the most important issue tried. Upon that issue, the plaintiff offered in evidence the following certificate of the street superintendent of the village :

" I, the superintendent of streets of the village of Greenbush, do hereby certify that Richard Parr has completed his contract with the village in flagging and curbing the west side of East street in said village, in accordance with the terms of his written contract, the work having been done in good and workmanlike manner, and all materials used are as called for.     (Signed)          WILLIAM F. RYAN."

This was objected to by defendants, on the ground that it was immaterial and incompetent; that there was no proof that Ryan had any power to give the certificate; that it was not binding upon the defendants, and was the statement of a third person. The objection was overruled, and an exception was taken. This evidence was clearly incompetent, and could not fail to be very damaging to the defendants upon the issue of fact most litigated. The charter, as amended in 1871 (chap. 683, tit. 1, § 4), provides for the election of a street commissioner, but does not specify his duties. The trustees under title 2, section 3, of that chapter, were to declare and define his duties, and they had done so, by an ordinance which provided that he was to superintend, under the general direction of the board of trustees, all work to be done or performed, or ordered to be done or performed, upon any of the streets, lanes, alleys, walks, bridges, sewers, docks, public grounds or property of the village; and that he was to certify to the board of trustees all persons who shall have been employed by him, the time worked by each, and the place where the labor was performed, the compensation paid to each and, from time to time, to communicate to the board the condition and requirements of the streets, alleys, walks, sewers, etc. This ordinance gave him no authority to certify to the performance of this contract. This certificate could not be made evidence against the defendants, unless some statute, or the defendants, by ordinance or in some other way, authorized it to be made. It was no part of his duty to make it, and it was no part of any res gestæ. It was mere hearsay, and its reception was a plain violation of a rule of evidence too important to be disregarded.

It cannot be said that it was properly received on the question of fraud, as justifying the action of the trustees, upon the theory that their action was justly influenced by it, because there is no evidence that it came to the knowledge of any of the trustees, or that they based any action upon it, or that, in fact, any person ever saw it before the commencement of this action, but the superintendent and Parr.

But another error was committed, which must also be noticed. In 1871, by the chapter above named, defendant's charter was amended, and by subdivision 23 of section 3, title 2, it was provided that whenever "the grading or paving of any street, sidewalk or crosswalk in any of the streets, lanes or avenues of said village," is authorized by the trustees, it shall be their duty "to advertise for sealed proposals for doing said work, and in all cases the trustees shall award such contract to the lowest responsible bidder." It is true that this provision was prospective in its operation. It was not intended to, and could not, affect a contract previously made. Hence the contract of December 20, 1870, remained valid, notwithstanding this provision; and all the stipulations thereof were to be kept and performed as if that amendment of the charter had not been enacted. By that contract Parr was not bound to do, and had no right to do, the grading, or to furnish the sand and gravel. That work and those materials were to be furnished by the trustees; and when the time came for furnishing them they were to be governed by the law then in force. They had not bound themselves to furnish them in any particular mode; and whether their obligation to furnish them arose out of contract, or was imposed by law, they were bound to discharge the obligation in the mode prescribed by law. In 1870 there was a job of flagging, paving and curbing to be done, and the trustees let a portion of that job to Parr, and the balance, to wit, the grading and furnishing the gravel and sand they were themselves to do. What Parr had contracted to do was uninfluenced by the amendment of the charter in 1871. But the law could regulate their conduct, and what they were to do came under the law in force when they undertook to do it. It was work and materials in the grading and paving of a sidewalk and street, and they could no more contract with Parr to do it, unless he was the lowest bidder after advertising, than they could with any other person. Therefore, the resolution of September 30, 1873, and the contract thereby made under which Parr acted,

was illegal, and by virtue thereof he has no claim against the village.  A person contracting with public officers must take notice of their powers.   He is charged with knowledge of the law, and he makes a contract in violation of law at his own risk.   When the law commands public officers, before entering into contracts, to advertise and contract with the lowest bidder, a contract made without advertising and without competition is wholly illegal and imposes no obligation upon the public body assumed to be represented.   Laws of this character, imposing restraints upon public agents, have been found to be necessary and beneficial, and public policy requires that they should be rigidly inforced.

But the claim is made that, as the work and materials were furnished, and the village has received some benefit from them, it is under an implied obligation to pay what they were worth.   If this were so, the law could always be easily evaded ; that it is not so is no longer an open question in this court.   (*Brady* v. *City of New York*, 20 N. Y., 312; *McDonald* v. *The Mayor*, 68 id., 23.)   Therefore, the objection of the defendants to any recovery for the work done under the resolution of September 30, 1873, should have been sustained.

For the two errors noticed, the judgment must be reversed and new trial granted.

All concur.

Judgment reversed.