[Inge *et al.* v. Board of Public Works of Mobile.]

# Inge *et al. v.* Board of Public Works of Mobile.

*Bill by Tax Payer to declare Null and Void Contract by Municipal Corporation for Paving Streets.*

1. *Municipal corporations; injunction at suit of tax payer.*—Courts of equity, at the suit of tax payers, have authority to enjoin municipal authorities from issuing illegal warrants or scrip, or misappropriating public funds, or improperly creating debts, or abusing corporate powers.

2. *Same: contracts; letting contract to lowest responsible bidder.* A provision in a municipal charter that certain contracts, therein provided for, shall be let to the lowest responsible bidder, is mandatory, and a compliance with its provisions is essential to the validity of such contracts.

3. *Same; determination of lowest responsible bidder.*—The determination of who is the lowest responsible bidder rests not in the exercise of an arbitrary, unlimited discretion of the officer or board awarding the contract, but upon the exercise of a *bona fide* judgment based upon facts tending reasonably to the support of such determination.

4. *Same; fraud and gross abuse in awarding contracts.*—In the absence of fraud or gross abuse, the courts will not interfere with the exercise of discretion by administration boards in their determination of who is the lowest responsible bidder.

5. *Same; acceptance of bid as determination that bid was let to lowest responsible bidder.*—Where the action of a municipal board in the letting of a contract is assailed, and it is directly charged that the letting was not to the lowest responsible bidder, as required by the charter, it will not be presumed from the mere acceptance of a certain bid by the board, that the board in the exercise of its judicial discretion, after due consideration of all bids, determined such one to be the lowest responsible bidder.

6. *Same; contract not in accordance with terms of bid as published.* An additional stipulation in a contract, awarded to one who is not the lowest bidder, whether of advantage to the city or not, will invalidate the contract, if it constitute a mistrial change and a departure from the basis of bidding as published,

[Inge *et al.* v. Board of Public Works of Mobile.]

and becomes an element or consideration in determining who is the lowest and best bidder.

7. *Municipal corporations; contract for street paving; assumption by contractor of city's liability for damage.*—A contract for street paving, whereby the contractor assumes "all risk of damages to property along or near the line of work," is void, and may be so declared at the suit of a tax payer, as it naturally tends to increase the amount bid for the contract and to increase the burden to be borne by the tax payer and abutting property owners.

8. *Same; stipulation in contract against employment of alien or convict labor.*—A stipulation against the employment of alien or convict labor, contained in the stipulations which formed the basis of the bids for a contract for street paving, renders the contract void, being opposed to the interests of the tax payer, by narrowing the field for the employment of labor and thereby tending to increase the amounts bid.

9. *Constitutional law; validity of assessment for street paving; charter of Mobile.*—A provision in a municipal charter, providing for the assessment against property owners of the costs of street paving or improvements, to be measured by the "special benefits accruing to said property or property owner by reason of said paving or improving, and in no case to exceed four dollars per front foot," is not violative of section 223 of Const., Ala., 1901, providing that "No municipality shall make any assessment for the costs of street paving in excess of the increased value of such property by reason of the special benefits derived from such improvements."

10. *Same.*—Where there is room for the statutory provision for assessment within the constitutional limitation, and no work has been done under the contract, and it does not appear what will be the amount of the assessment when made, it can not be assumed that the assessment, when made under the measure fixed by the statute, will exceed the amount limited by the constitution.

11. *Contract for paving streets, validity of as affected by possible failure to collect assessments against abutting property.*—A contract for paving city streets is not rendered invalid by the fact that the authority granted by the legislature to pave the streets involves a considerable outlay, and that in the event of a failure to collect the assessments against the abutting property it would have to be met out of the general revenues of the city.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by Richard Inge and others as taxpayers of the city of Mobile, against the Board of Public Works, in charge of municipal improvements in the city of Mobile, and against the individual members thereof, seeking to have enjoined the payment of any moneys of the city upon two certain unperformed contracts for paving in the city of Mobile; one of said contracts being for the paving of certain streets with asphalt and the other for paving certain streets with brick. The two contracts were set out as exhibits to the bill and are distinct from each other, but were let at the same time and to the same contractor. The grounds for enjoining the payment of moneys under the contracts are that the contracts are void, void for matters of invalidity within themselves and also because of the invalidity of the statutory system of making and paying for such improvements. The averments of the bill and stipulations of the contracts assailed are sufficiently shown by the opinion.

There was a motion to dismiss the bill for want of equity, and demurrers were also interposed to the bill as follows: *"First.* Defendants demur to so much of the bill as charges that the asphalt paving contract therein mentioned was not awarded to and made with the lowest responsible bidder therefor, upon the ground: That the bill shows that the Board of Public Works did sufficiently determine the bid upon which said contract was awarded to be the lowest responsible bid made therefor, and fails to show that in the exercise of its discretion to so determine, said board was guilty of fraud or misconduct. *Second.* And defendants demur to so much of said bill as alleges that said board failed to adjudicate that the bid for the said asphalt paving contract, made by said Southern Paving and Construction Company and accepted by said board, was the lowest responsible bid therefor, upon the grounds: 1. That it appears in and by said bill that said board did in fact

sufficiently so determine. 2. That it appears in and by said bill that said board accepted said bid and awarded said contract upon the same, and that such facts constitute a sufficient determination by said board that the same was the lowest responsible bid. *Third.* And the defendants demur to so much of said bill as alleges the offer made by the counsel of the Southern Paving and Construction Company and the inclusion of said offer in the written contract for asphalt paving, upon the grounds: 1. That said offer and the contract made thereon did not operate to relieve said company from any of its obligations to the city of Mobile covered by its bid, but was an additional burden upon the company and the same do not tend to establish that said bid was not that of the lowest responsible bidder. 2. That it does not appear by the bill that said offer and the contract made thereon were in any way to the prejudice of the complainants. *Fourth.* And defendants demur to so much of said bill as charges that said board required by its specifications for bids, and by contracts made thereunder, that the contractor shall be responsible for damages to persons and property along the line of the work, upon the grounds: 1. That such stipulation was reasonable and proper for the protection of the city of Mobile and the persons who might sustain the injuries specified within such contract of liability. 2. That such stipulation did not subject the contractor to any liability beyond that for misfeasance and nonfeasance of itself and its servants, and that it was reasonable and proper that the same should be specially stipulated for, that it might be clearly secured by the general bond required of the contractor. *Fifth.* To so much of said bill as charges that said board required, by its specifications for bids and by the contracts made thereunder, that 'No convict, alien or unnaturalized labor shall be employed upon the work; with the exception of skilled mechanics, no labor shall be imported without the consent of the Board of Public Works,' upon the grounds: 1. That such stipulation was reasonable and proper. 2. That it is not shown by the bill that the effect of such stipulation as a part of the con-

tract was necessarily or probable to increase the cost of the execution thereof. *Sixth.* To so much of said bill as charges that the provisions of the act of the General Assembly of March 5th, 1901, providing for the paving of the city of Mobile are in conflict with the existing constitution of Alabama, and are void, upon the following grounds: 1. That it is shown by the bill that the money necessary for the paving covered by the contracts therein asasiled has already been provided by the sale of bonds of the city of Mobile, and that the liability of abutting property holders to contribute to the fund necessary for the payment of said bonds is a question affecting the adequacy of the provisions for the redemption of such securities, and not the use of the money provided thereby. 2. That the provisions of the said act for such contribution by abutting property owners as set forth in the bill are not inconsistent with the constitutional restrictions therein set out. 3. That section 92 of said act of March 5th, 1901, makes the following further provision as to such assessments against abutting property holders: 'That if for any reason any assessment or any part thereof should be invalid or incapable of enforcement, this shall not absolve the property owners and the property from the indebtedness due for said paving or improving, but said board shall proceed to make a new and valid assessment in accordance with the law and the facts in whole or in part as may be necessary,' which provision secures a lawful assessment under the constitution and valid laws regulating the same, if more specific provisions of said act for such assessment are wholly or in any respect invalid or incapable of enforcement. *Seventh.* To so much of said bill as charges that the city of Mobile will not be able to pay the cost of such paving without contribution from abutting property owners, upon the following grounds: 1. That the question thereby presented is not a matter for judicial decision or action, but only for legislative consideration in the matter of granting authority to the city of Mobile to issue and sell its bonds and use the proceeds thereof for paving. 2. That the said question is pertinent only to the authority of the city of Mobile to issue and sell its bonds for paving pur-

poses, and not to its right to use for such purposes money in hand, the proceeds of such bonds already issued and sold."

From a decree sustaining said motion and demurrers complainants appeal, and assign the rendition thereof as error.

E. L. RUSSELL and FITTS, STOUTS & ARMBRECHT, for appellants.—A taxpayer may seek the aid of equity and the remedy of an injunction where the public authorities are about to issue illegal warrants or scrip or to misappropriate public funds or abuse corporate powers or to improperly create debts.—1 Dill. Mun. Corp., § 504; 2 *Ib.* §§ 914, 916, 921.

If for any reason a contract is void no payment made thereon is proper, and city officials may be enjoined from making such payments.—*Adams v. Shelbyville*, 49 L. R. A. 808.

A provision in the charter that contracts shall be let to the lowest responsible bidder, after advertising for bids, is mandatory, and compliance therewith is essential to the validity of contracts, even though such contracts are fully performed and substantial benefits are conferred on the city.—*McCloud v. Columbus*, 44 N. E. Rep. 95; *People ex rel. Coughlin v. Gleason*, 121 N. Y. 631; *Zottman v. San Francisco*, 81 Am. Dec. 96; *Parr v. Greenbush*, 72 N. Y. 463; *People v. Board*, 43 N. Y. 231; *City Imp. etc., v. Broderick*, 125 Cal. 139; *McBrian v. Grand Rapids*, 56 Mich. 95; *Brady v. New York*, 20 N. Y. 312; *Brown v. New York*, 68 N. Y. 23; *Mazet v. Pittsburg*, 137 Pa. St. 548; *State ex rel. Shaw v. Trenton*, 49 N. J. Law 339; *Attorney General v. Detroit*, 26 Mich. 267; *Holden v. Alton*, 179 Ill. 323; *Times, etc., Co. v. Everett*, 43 Am. St. Rep. 865.

To require the bids upon one basis and award the contract upon another is, in practical effect, to abandon all bids.—*Wickwire v. City of Elkhart*, 43 N. E. Rep. 218; *People v. Board of Improvement*, 43 N. Y. 229; *Shaw v. City.* 49 N. J. Law, 339; Dillon on Mun. Corp., 447 and 449.

[Inge *et al.* v. Board of Public Works of Mobile.]

The provision for the liability of the contractor imposes burdens beyond the necessary cost of the work and invalidates the contracts.—*Blockman v. Spreckles,* 135 Cal. 662.

The stipulation against the employment of alien or convict labor renders the contracts void.—*In re Kubach,* 9 L. R. A. 483; *People v. Coler,* 82 Am. St. Rep. 613; *Baker v. Portland,* Fed. Cases 777; *People v. Warren,* 34 N. Y. Sup. 942; *Holden v. City,* 179 Ill. 323.

The charter system for assessments against abuttting property owners is unconstitutional. Const., 1901, § 223; *Town v. City Council,* 47 N. E. Rep. 1030; *Uphan v. Worcester,* 113 Mass. 99; *Sears v. Board of Boston,* 62 N. E. Rep. 397; *Foss v. Chicago,* 56 Ill. 359; *Union Bldg. Assn. v. Chicago,* 61 Ill. 443; *Dean v. Charlton,* 23 Wis. 609.

B. B. BOONE and R. H. & N. R. CLARKE, *contra.*—The board had a discretion to determine who was the lowest responsible bidder, and when that discretion is exercised to the best of its judgment and for the public interests, an injunction will not be granted in the absence of a clear showing of fraud or bad faith, nor will *mandamus* lie to compel the award of the contract to one whose bid is merely the lowest in amount.—High on Inj. (3d ed.) 1191; 20 Am. & Eng. Enc. of Law, (2d ed.) 1169; *Dibbler v. Town,* 56 Conn. 199; *Findley v. Pittsburg,* 82 Penn. St. 351; *American Pavement Co. v. Wagner,* 139 Penn. St. 621; *Keely v. Chicago,* 62 Ill. 279; *Stevens v. St. Mary's Training School,* 144 Ill. 336; *Johnson vs. Landry Dist.,* 163 Ill. 285; *State v. Scott,* 17 Neb. 686; *Mills Pub. Co. v. Larrabee,* 78 Iowa, 77; *People v. Fay,* 3 Lans. 398; *State v. McGrath,* 91 Mo. 386; *Strenna v. City Council,* 86 Ala. 340; *State v. Richards,* 50 Am. St. Rep. 480, and note; *State v. Barnes,* 23 Am. St. Rep. 520; *Madison v. Harbor Board,* 76 Md. 395; *State v. Board of Education,* 24 Wis. 683.

A bidder's responsibility, experience and his facilities for carrying out his contract may be looked to in determining whether his bid is the lowest.—*Commonwealth v. Mitchell,* 82 Penn. St. 343; *Findley v. Pitts-*

*burg*, 82 Penn. St. 351; *Douglas v. Commonwealth*, 108 Penn. St. 359; 20 Am. & Eng. Enc. Law, (2d ed.), p. 1170; note to 50 Am. St. Rep. 489.

If the stipulation or provision, that no alien or convict labor should be employed, was void, it was separable and divisible from the remaining provisions, and does not render the whole contract void.—*Robertson v. Hayes*, 83 Ala. 290; *Trammel v. Chambers County*, 93 Ala. 390.

The contracts were not violative of the constitution; the constitution being merely declaratory of the law as well established that no assessment can be made for paving which is in excess of the special benefits accruing to the property by such paving.—*Bienville Water Supply Co. v. City of Mobile*, 22 U. S. Sup. Ct. Rep., 824.

The powers and duties of municipal corporations, except in so far as they are specifically fixed by constitutional provisions, are created and defined by the legislature.—20 Am. & Eng. Enc. of Law, (2d ed.), p. 1139.

The motion to dismiss the bill for want of equity was properly granted.—*Tait v. Am. Freehold Land Mtg. Co.*, 132 Ala. 193.

DOWDELL, J.—The bill in this cause was filed by Richard Inge and others, appellants here, as taxpayers of the city of Mobile, and abutting property owners on certain named streets of said city, included in the paving contracts, which are made an exhibit to the bill, and which were entered into on Sept. 6th, 1902, between the Board of Public Works of the city of Mobile and the Southern Paving & Construction Company, a body corporate. The bill assails the validity of said contracts and seeks to have the same decreed null and void. The cause was heard before the chancellor on demurrer to the bill, and motion to dismiss the same for want of equity, and from his decree sustaining the demurrer and motion, and dismissing the bill, the present appeal is prosecuted.

In our consideration of the questions raised we do not propose to follow counsel into all of the phases pre-

sented in arguments, oral and written, but prefer to lay down the principles which we think control, and state our conclusions in as brief a manner as practicable.

In the outset, we think it may be safely stated as a general proposition, that a taxpayer may seek the aid of a court of equity and relief by injunction where the municipal authorities are about to issue illegal warrants or scrip, or to misappropriate public funds, or to abuse corporate powers.—1 Dillon Mun. Corp., § 504; 2 Dillon Mun. Corp., §§ 914, 921. So also may courts of equity, on bills filed by taxpayers, enjoin the improper creation of debts.—2 Dillon Mun. Corp. § 916.

There were two contracts entered into between the Board of Public Works and the Southern Paving & Construction Co.; one for paving certain named streets with vitrified brick, and the other for paving certain other named streets with asphalt. The alleged infirmities averred in the bill common to both contracts are, first, that the contracts contained improper stipulations imposing upon the contractor a responsibility and liability for damage to persons and property, beyond his liability for torts in his own business, or growing out of the nature of the work contemplated; second, that the contracts contained improper restrictions upon the kind of labor, that might be employed by the contractor; and third, that the provision of the charter of the city of Mobile regulating the assessments against abutting property owners for the improvements of the streets, is different from and in conflict with the provisions of the new constitution of the State, prescribing a system of assessment.

It is furthermore alleged in the bill, that the contract for the asphalt paving, is invalid for the additional reasons, first, that the contract was not awarded to the "lowest responsible bidder," as required by the charter of the city of Mobile; second, that the contract improperly contains a provision requiring the contractor to keep the pavement in repair for a long term of years; and third, that the contract contained a material provision concerning the price as to future paving in the city, and which was not contemplated in the competitive bidding. The bill, therefore, for these several and distinct

grounds, challenges the validity of the contracts, and prays that the same may be annulled, and also prays for an injunction.

While the demurrer purports in its caption to be to the bill in its entirety, the several assignments or grounds are specifically directed to particular parts of the bill. The bill as a whole is not questioned by any ground of demurrer for deficiency in statement, or failure of averment of facts. It is quite clear, we think, that if the contracts or contract, are invalid for any one of the causes alleged in the bill, then the bill would not be wanting in equity.

The first assignment of the demurrer is to that part of the bill, which relates to, and avers the invalidity of the contract for the asphalt paving. The ground of demurrer is stated as follows: "They [respondents] demur to so much thereof as charges that the asphalt paving contract therein mentioned was not awarded to and made with the lowest responsible bidder therefor, upon the ground: That the bill shows that the Board of Public Works did sufficiently determine the bid upon which such contract was awarded to be the lowest responsible bid therefor, and fails to show that in the exercise of its discretion to so determine, said board was guilty of fraud or misconduct." The second assignment of the demurrer, also, relates to the asphalt paving contract, and is stated as follows: "And defendants demur to so much of said bill as alleges that said board failed to adjudicate that the bid for the said asphalt paving contract, made by said Southern Paving & Construction Company and accepted by said board, was the lowest responsible bid therefor, upon the grounds: 1. That it appears in and by said bill that said board did in fact sufficiently so determine. 2. That it appears in and by said bill that said board accepted said bid and awarded said contract upon the same, and that such facts constitute a sufficient determination by said board that the same was the lowest responsible bid." The third assignment likewise, relates to the asphalt paving contract, and is stated as follows: "Third: And the defendants demur to so much of said bill as alleges the offer made

by the counsel of the Southern Paving and Construction Company and the inclusion of said offer in the written contract for asphalt paving, all as alleged in the ninth paragraph of the bill, upon the grounds: 1. That said offer and the contract made thereon did not operate to relieve said company from any of its obligations to the city of Mobile covered by its bid, but was an additional burden upon the company, and the same do not tend to establish that said bid was not that of the lowest responsible bidder. 2. That it does not appear by the bill that said offer and the contract made thereon were in any way to the prejudice of complainants."

Section 75 of the charter of the city of Mobile (Acts 1900-1901, p. 2391), under which the Board of Public Works derives its authority and power to make the contracts in question, provides that such contracts shall be let to the "lowest responsible bidder" after advertising for bids, and that "said board shall have no power to pledge the credit of the city except as herein provided." The provision that the contract shall be let to the lowest responsible bidder, is mandatory, and this seems to be emphasized by the further provision, that the "said board shall have no power to pledge the credit of the city except as herein provided." It is plainly a duty imposed by the law upon those on whom the power to contract is conferred, and a compliance with its requirements is essential to the validity of the contract. It is a general rule that a provision of this kind is mandatory, and unless the requirements imposed by the statute are complied with, the contract is rendered invalid.—*McCloud v. Columbus*, 44 N. E. Rep. (Ohio) 95; *Zottman v. San Francisco*, 81 Am. Dec. (Cal.) 96; *Parr v. Greenbush*, 72 N. Y. 463, 471; *People v. Board of Improvement*, 43 N. Y. 231; *City Imp. Co. v. Broderick* (125 Cal. 139), 57 Pac. Rep. 776; *McBrian v. Grand Rapids*, 56 Mich. 95; 22 N. W. Rep. 206; *Brady v. New York*, 20 N. Y. 312; *Brown v. New York*, 68 N. Y. 23; *McDonald v. The Mayor*, 23 Am. Rep. 144; *Mazet v. Pittsburg*, 137 Pa. St. 548, 20 Atl. Rep. 693; *State ex rel. Shaw v. Trenton*, 49 N. J. Law, 339; *People ex rel. Coughlin v. Gleason*, 121 N. Y. 631.

In the lettting of public contracts to the lowest responsible bidder, the duty of the officer is not merely ministerial, but partakes of a judicial character, requiring the exercise of discretion. A discretion, however, which should always be exercised to the end of subserving the public interest, and never in the interest of the bidder. In deciding upon the responsibility of bidders it is the duty of the board or officers not only to take into consideration the pecuniary ability of bidders to perform the contract, but also to ascertain which ones, in point of skill, ability and integrity would be most likely to do faithful, conscientious work, and to fulfill the terms of the contract. "The determination of who is the lowest bidder, with the qualification of responsibility, rests not in the exercise of an arbitrary, unlimited discretion of the officer or board awarding the contract, but upon the exercise of a *bona fide* judgment, based upon facts tending reasonably to the support of such determination." See notes to case of *State v. Richards,* 50 Am. St. Rep. 489 *et seq.* where authorities are collected, with comments by Mr. Freeman on the subject. After determining from these considerations who are responsible bidders and who are not among those bidding, separating the responsible ones from the irresponsible, it becomes a matter of the amounts bid, and the law imposes the plain duty of selecting the lowest bid in amount. Of course, it is to be understood, that the bid is to be made in compliance with the notice and specifications calling for bids. In the absence of fraud or gross abuse, the courts will not interfere with the exercise of discretion by administration boards or officers in their determination of who is the lowest responsible bidder. But in awarding the contract, it ought to appear that the contract has been by the board, in the exercise of its judgment and discretion, let to the lowest responsible bidder. And whatever may be the presumption to be indulged in favor of its action in this respect, when the contract is let to one whose bid is not the lowest in amount, where its action is not assailed, it is quite clear, that when its action is assailed, and it is directly charged that the letting was not to the lowest

responsible bidder, it will not be presumed on demurrer, which is a confession of the facts stated in the bill, from the mere acceptance of the bid by the board of him to whom the contract is awarded, that the board in the exercise of its judicial discretion, after due consideration of all bids, determined such one to be the lowest responsible bidder.

The bill in the present case distinctly avers that the Southern Paving & Construction Company, to whom the contract was let, was not the lowest bidder for the asphalt paving, but that the Green River Asphalt Company was the lowest bidder for that contract, and that said latter company was a responsible bidder. It is further charged in the bill that said Board of Public Works never "adjudicated" who was the lowest responsible bidder for the asphalt paving, as was their duty under the statute, but arbitrarily awarded the contract to the Southern Paving & Construction Company, whose bid was more than two thousand dollars in excess of the bid of the Green River Asphalt Company, the lowest responsible bidder. Taking these allegations to be true, which must be done on demurrer, the bill clearly makes a case of a failure on the part of the Board of Public Works to comply with the mandatory provision of the statute requiring the contract to be let to the lowest responsible bidder. The demurrer going to this part of the bill was not well taken, and should not have been sustained.

The charter of the city of Mobile provides that publication must be made "in such newspapers or other periodicals in the United States or elsewhere as said board may direct," calling for bids on the contracts to be let. This, of course, required that there should be some rule or standard by which all bids were to be measured; the purpose of this requirement being of a two-fold nature. In the first place, by competitive bidding to secure the lowest reasonable price for the articles furnished or services to be performed, and in the next place to prevent anything like favoritism on the part of the officers, and to secure fairness in the bidding. The basis of the bidding and the contract entered into should

be the same, for otherwise the very object and purpose of the law in calling for competitive bidding might be thwarted. "To require the bids upon one basis and award the contract upon another would, in practical effect, be an abandonment of all bids."—*Wickwire v. City of Elkhart,* 43 N. E. Rep. (Ind.) 218; to the same effect, *People v. Board of Improvement,* 43 N. Y. 229; *Shaw v. City of Trenton,* 49 N. J. Law, 339. Any material departure in the contract awarded from the terms and conditions upon which the bidding is had, renders the contract, in a sense, a private one. To permit such in the awarding of public contracts by public officers, would be to open wide the door for favoritism, and defeat the thing which the law intended to safeguard in requiring the contracts to be let upon bids made on advertised specifications. It is unimportant whether the additional stipulation contained in the contract awarded to one, who is not the lowest responsible bidder, be in itself an advantage to the city or not, if it constitutes a material change, and, therefore, a departure from the basis of the bidding, and becomes an element or consideration in the determination of who is the lowest and *best* bidder, it will invalidate the contract entered into. The bill alleges, that the contract entered into with the Southern Paving & Construction Company contained conditions as to future paving, which were not embraced in the published notice for bidding, and that the stipulations and agreements on the part of the Southern Paving & Construction Company, as to such future paving, induced the letting of the contract to said company, in disregard of the fact that the Green River Company was the lowest responsible bidder on the advertised basis. This being true, would authorize a bill in equity, by an abutting property owner and taxpayer.

Considering the alleged infirmities averred in the bill as common to both contracts entered into with the Southern Paving & Construction Company, the first of these charges is based on the stipulations as to the responsibility of the contractor contained in the 14th section of the contract. The contention being, that in re-

quiring the contractor to assume liability for damages to person and property, put upon the contractor a burden that tended to swell the cost of the work in the bids under the call. Section 14 is as follows: "The contractor shall be responsible for all loss or damage, if occasioned through neglect, omissions or failure on his part, or that of his agents or employes, to take such precautions as would prevent the same; he shall assume all risk of damages to any portion of his work; to fences, trees, buildings, pipes, conduits, railway tracks or other public or private property along or near the line of the work, and of any accident resulting in damage or injury to persons or animals." That portion of said section which places upon the contractor the assumption of "all risk of damages * * * to fences, trees, buildings, pipes, conduits, railway tracks or other public or private property along or near the line of the work," whether construed separately, or in connection with the rest of the section, imports more than a provision against the negligence of the contractor. We think the plain purpose and intention of this provision was to take away from the city and put upon the contractor the duty of paying for all damages done to property "along or near the line of the work," although necessary to a proper performance of the contract. As for instance, the cuttting of roots of trees along or near the line, necessary to be done in carrying out the contract of paving, whereby the trees are destroyed, resulting in damage to the owner. This is a liability which properly rests upon the city. To require the contractor to assume the risk of such damages, would naturally tend to increase the amount of his bid for the contract, the result of which would be to increase the burden to be borne by the taxpayer, to say nothing of the increase of the proportionate part of the burden to be borne by the abutting property owner. In *Blockman v. Spreckles,* 67 Pac. Rep. 1061, s. c. 135 Cal. 662, under a contract containing a liability clause somewhat similar to the one here, the court held the contract void because the tendency of the requirements was to make the work cost more. It was there said: "The law does not authorize a municipality to escape its liability by shifting it to

the shoulders of the contractor, and in attempting to do so it imposed conditions that would naturally tend to increase the cost of the work."

The stipulation in the contracts against the employment by the contractor of alien or convict labor presents a question which has received consideration in a number of cases in the courts of the country. This condition was contained in the specifications, which formed the basis of the bids called for. It narrowed the field for the employment of labor, and was a restriction upon the contractor that naturally tended to make him increase the price of his bid. Such a limitation is directly opposed to the interest of the taxpayer, who is entitled to have the work done at the lowest cost. The authorities are generally agreed that such a provision invalidates the contract. The following cases discuss the principle here involved and contain citations of other authorities: *People v. Coler,* 82 Am. St. Rep. 605; *Baker v. Portland,* Fed. Cas. 777; *People v. Warren,* 34 N. Y. Sup. 942; *Holden v. City of Alton,* 179 Ill. 323.

A court of equity is the only forum to which the taxpayer could resort to protect himself against the illegal contract. He would clearly have no standing in a court of law. How may these appellants, mere taxpayers, get the ear of a court of law in these matters? The city might plead the invalidity of the provision, but the bill in this case avers that the board and said company pretend that said contracts are valid and are about to perform them, and the board to pay out the city's money for such performance.

It is insisted by the bill that those sections in the act of March 5th, 1901, (Acts 1900-1901, p. 2397, §§ 85 and 86), which authorize the board to pave the streets of the city of Mobile, are void, because in conflict with section 223 of the present constitution. Section 223 reads as follows: "No city, town or other municipality, shall make any assessment for the costs of sidewalks or street paving, or for the cost of the construction of any sewers against property abutting on such street or sidewalk so paved, or drained by such sewers, in excess of the increased value of such property by reason of the special

benefits derived from such improvements." That portion of the statute of March 5th, 1901, which is here urged as being in particular offensive to the section of the constitution above set out, is as follows: "The amount assessed against such property or property owner to be measured by and in no case to exceed the special benefits accruing to said property or property owner by reason of said paving or improving, and in no case to exceed four dollars per front foot measured on all the streets, alleys or public places on which the property has a front which have been paved or improved." It will be observed that the provision of the constitution is a limitation on the amount that can be assessed against the property owner. That is the amount assessed shall not exceed the increased value of such property by reason of the special benefits derived from such improvements. Whatever meaning may be given, or construction put on, the words *"special benefits"* used in the provision of the constitution and in the statute, we think it plain that the constitutional provision contains no restriction as to the standard by which the assessment shall be measured, except that it shall not exceed the "increased value of such property by reason of the special benefits derived from such improvements." If the amount of assessment against such property owner be made in accordance with the measure provided in the statute, that is, by the "special benefits accruing to said property or property owner by reason of said paving or improving," and does not exceed the increased value of such property by reason of the special benefits derived from such improvement, wherein can it be said that the constitutional provision is violated? There is clearly room for the statutory provision for assessment within the limitation fixed by the constitution. Section 85 of the act of March 5th, provides that no estimate of the cost of paving chargeable to abutting property owners can be made until after the paving is completed. In the present case no work has been done under the contract, consequently the board has done nothing that it is prohibited by section 223 of the constitution. There are no averments in

the bill to show what will be the amount of the assessment when made. It cannot be assumed that the assessment when made under the measurement fixed by the statute, will exceed in amount the limitation put by the constitution.

There is no merit in the question raised by the bill, that the authority granted by the legislature to pave the streets of the city involves a considerable outlay, and in the event of a failure to collect the assessments against the abutting property it would have to be met out of the general revenues of the city. The powers and duties of municipal corporations are created and defined by the legislature, except in so far as they are specifically fixed by constituttional provisions.—20 Am. & Eng. Ency. Law (2d ed.), p. 1139. These are matters peculiarly within the control of the legislature, when not restricted by constitutional provision, and the courts have no right to interfere.

It follows from what we have said in the foregoing opinion, that the decree of the chancellor sustaining the motion and dismissing the bill for want of equity must be reversed and a decree here rendered overruling the motion. The decree sustaining the demurrers will be modified to the extent of sustaining the demurrers which are numbered six and seven, and overruling demurrers numbered one, two, three, four and five and, as modified, will be affirmed. The appellee will pay the costs of appeal of this court and of the lower court.

In part reversed and rendered, and in part modified and affirmed.