WILLIAM E. LEFFINGWELL, a Taxpayer of the Village of Watkins, Appellant, *v.* DELAVAN W. SCUTT, Individually and as President of the Village of Watkins, and Others, Respondents.

Third Department, September 15, 1927.

Villages — powers — taxpayer's action under General Municipal Law, § 51, to restrain enforcement of contract with persons employed to make blanket assessment — contract is illegal and enforcement is restrained.

A contract by a village board with third persons to make a blanket assessment for the board of assessors and to pay therefor a percentage of the assessment is illegal and its enforcement will be restrained in a taxpayer's action instituted under section 51 of the General Municipal Law.

DAVIS and HINMAN, JJ., dissent, with opinion.

APPEAL by the plaintiff, William E. Leffingwell, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Schuyler on the 14th day of December, 1926, upon the decision of the court rendered after a trial at the Schuyler Special Term dismissing the complaint upon the merits.

For convenience and accuracy, section 51 of the General Municipal Law, so far as material, is set forth:

" Prosecution of officers for illegal acts. All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this State, and each and every one of them, may be prosecuted, and an action may be maintained against them to prevent any

illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation by any person or corporation whose assessment, or by any number of persons or corporations, jointly, the sum of whose assessments shall amount to one thousand dollars, and who shall be liable to pay taxes on such assessment in the county, town, village or municipal corporation to prevent the waste or injury of whose property the action is brought, or who have been assessed or paid taxes therein upon any assessment of the above-named amount within one year previous to the commencement of any such action. * * * In case the waste or injury complained of consists in any board, officer or agent in any county, town, village or municipal corporation, by collusion or otherwise, contracting, auditing, allowing or paying, or conniving at the contracting, audit, allowance or payment of any fraudulent, illegal, unjust or inequitable claims, demands or expenses, or any item or part thereof against or by such county, town, village or municipal corporation, or by permitting a judgment to be recovered against such county, town, village or municipal corporation, or against himself in his official capacity, either by default or without the interposition and proper presentation of any existing legal or equitable defenses, or by any such officer or agent, retaining or failing to pay over to the proper authorities any funds or property of any county, town, village or municipal corporation, after he shall have ceased to be such officer or agent, the court may, in its discretion, prohibit the payment or collection of any such claims, demands, expenses or judgments, in whole or in part, and shall enforce the restitution and recovery thereof, if heretofore or hereafter paid, collected or retained by the person or party heretofore or hereafter receiving or retaining the same, and also may, in its discretion, adjudge and declare the colluding or defaulting official personally responsible therefor, and out of his property, and that of his bondsmen, if any, provide for the collection or repayment thereof, so as to indemnify and save harmless the said county, town, village or municipal corporation from a part or the whole thereof; * * * any recovery under the provisions of this article shall be for the benefit of and shall be paid to the officer entitled by law to hold and disburse the public moneys of such county, town, village or municipal corporation, * * *. The provisions of this article shall apply as well to those cases in which the body, board, officer, agent, commissioner or other person above named has not, as to those in which it or he has jurisdiction over the subject-matter of its action."

*Stanchfield, Collin, Lovell & Sayles* [*Halsey Sayles* of counsel], for the appellant.

*Walter H. Knapp*, for the respondents.

VAN KIRK, J. This is a taxpayer's action under section 51 of the General Municipal Law to restrain any further payment on an illegal contract and to recover into the village treasury money already paid thereon. The defendants are the village of Watkins, its trustees and treasurer, and Barrows, Reeves and Pollard, doing business under the firm name of Ellsworth, Barrows & Reeves.

The trustees of the village passed a resolution to employ the defendants Barrows, Reeves and Pollard, whom we shall call the " firm," to make " a blanket assessment for the board of assessors " and to pay them therefor two-tenths of one per cent of the assessment. The services were performed by the firm and part payment has been made.

The trustees are a body of limited powers. Their powers are given them by statute. The contract here in review is not authorized by any statute and is an illegal contract. The village is not liable upon a contract not authorized by law. (Village Law, § 333, as amd. by Laws of 1914, chap. 274.) To pay village money upon an illegal contract is an illegal official act. Section 51 (*supra*) authorizes a taxpayer to maintain an action against all officers, agents, commissioners and other persons, acting or who have acted for and on behalf of any village in this State, " to prevent any illegal official act " by those officers, agents or other persons. This action, therefore, may be maintained to restrain further payments upon this illegal contract.

The action may be maintained also to recover into the village treasury the moneys which have already been paid upon this contract. Moneys belonging to a municipality which have been paid out by an officer who had no authority to make the payment may be recovered by the municipality from the person receiving it. (*People* v. *Fields*, 58 N. Y. 491.) In that case (p. 505) the court, after stating that the record did not disclose fraud or collusion, said: " An action may be maintained on other grounds. The payment was made and received without any lawful power in the Comptroller to make it. The defendant is chargeable with knowledge of this. It was a payment by an agent, who had no authority as such, to make it. It was, then, no payment by the principal in mistake of law or ignorance of facts. The principal, in legal view, had no part in the payment, and it was made against its will. It was equivalent to an appropriation by the appellant of the moneys to his own use, with the acquiescence and help of the officer

of the city, who was authorized to pay them out not otherwise than in accordance with law. He having made the payment unlawfully, it was an act not within the scope of his agency and does not bind his principal. [Citing authorities.] There is, for these reasons, a right of action somewhere, against the appellant, to recover the whole or a part of these moneys." And in a like case (*Village of Fort Edward* v. *Fish*, 156 N. Y. 363, 373) it is said: " The doctrine of voluntary payment cannot be invoked by the defendant to enable him to retain the money of the plaintiff that was illegally paid to him. That doctrine applies to individuals who have power to do as they wish with their own, but it does not apply to an agent of a municipal corporation, who pays out its money without power, to one who accepts it with knowledge." Such " right of action " is in a taxpayer under section 51, which provides for an action " to prevent waste or injury to, or to restore and make good," property and funds of a municipality. Payment of money upon an illegal claim occasions waste. (*Ayers* v. *Lawrence*, 59 N. Y. 192; *Trumbull* v. *Palmer*, 104 App. Div. 51.) In case the waste or injury complained of consists in any board, officer or agent, " by collusion or otherwise," paying any illegal claims against such village, " the court may, in its discretion, prohibit the payment or collection of any such claims, demands, expenses or judgments, in whole or in part, and shall enforce the restitution and recovery thereof, if heretofore or hereafter paid, collected or retained by the person or party heretofore or hereafter receiving or retaining the same." The words " collusion or otherwise " are not to be construed as limiting the right to recover funds to those payments which are tainted with active, willful collusion or something akin thereto in addition to illegality. A distinction is to be made, in respect to active collusion, between acts of municipal officers which are within jurisdiction and those which are without it; if within jurisdiction, then actual collusion must be shown before recovery may be had. But the fact that the payment is illegal, is beyond the power of the board or official to make, is sufficient to support the action. Both parties to the transaction are bound to know the limitation upon the use of the funds of the municipality and they cannot innocently use them otherwise. (*Parr* v. *Village of Greenbush*, 72 N. Y. 463, 471, 472; *Lyddy* v. *Long Island City*, 104 id. 218, 223.) To pay and to receive payment on an illegal claim brings the case within the statute. In *Smith* v. *Hedges* (223 N. Y. 176) it was held that a taxpayer's action could be maintained to recover moneys paid to a supervisor upon an illegal contract " whether such an audit is branded as fraudulent or as without jurisdiction. It is illegal with either brand." (*Stetler*

v. *McFarlane,* 230 N. Y. 400, 405.) All moneys recovered in such an action are for the village treasury. The members of the defendant firm are necessary parties, because recovery may be had from them. (*Osterhoudt* v. *Board of Supervisors of Ulster County,* 98 N. Y. 239.)

The taxpayer's action was intended to protect and secure the rights of the village and it was intended that therein a taxpayer could recover for the treasury moneys which had been wrongfully paid out in those cases in which the village might in its own name recover; the intent was to " give the taxpayer a concurrent action with the corporation for the prevention or correction of the wrongs mentioned in it." (*Ayers* v. *Lawrence,* 59 N. Y. 192; *Queens County Water Co.* v. *Monroe,* 83 App. Div. 105.) Those officers who had participated in the illegal acts might be slow to prosecute on behalf of the municipality.

It may be true that the services which the firm has rendered the village of Watkins are desirable and have been beneficial. If so it cannot affect the result here; the authority to contract for such services must come from the Legislature, not from the courts. Though services have been rendered and the village has received benefit therefrom there is no implied obligation to pay therefor. (*Parr* v. *Village of Greenbush,* 72 N. Y. 463, 472.) The comment of Judge VANN in *Village of Fort Edward* v. *Fish* (*supra*) is still wholesome: " It is a matter of grave public concern to protect municipal corporations from the unauthorized and illegal acts of their agents in wasting the funds of the taxpayers. It is only with the utmost difficulty that municipal officers and agents can be kept within the bounds of their authority now, but once let it go forth as the settled law of the State that an illegal contract can become the basis of a lawful compromise, entered into between the contractor and an agent guilty of the illegal action, and a new door will be opened to municipal spoliation."

The judgment should be reversed and judgment rendered in favor of plaintiff, adjudging that the contract with the defendants Barrows, Reeves and Pollard is illegal and void and restraining the defendants, members of the board of trustees of the village of Watkins and the president and treasurer of said village, from paying any funds of the village to the defendants Barrows, Reeves and Pollard, in consideration of services performed under said alleged contract, and restraining said Barrows, Reeves and Pollard from receiving any village funds in payment upon said contract; also adjudging that the plaintiff recover of the defendants Barrows, Reeves and Pollard the sum of $1,943.38, with interest from June 24, 1924, with costs.

We disapprove of findings of fact numbered 16, 18 and 19 and all findings of fact included in the conclusions of law. We make the findings as found by the trial court at the request of the plaintiff; also that the defendants Barrows, Reeves and Pollard demand payment of the balance due for services under the alleged contract and that payment thereof will be made unless restrained by the court; that plaintiff is entitled to judgment accordingly.

McCANN, J., concurs; COCHRANE, P. J., concurs with VAN KIRK, J., that an injunction should issue, but votes against a recovery of the money heretofore paid on the ground that such recovery in this action is not authorized by section 51 of the General Municipal Law, and on the authority of *Stetler* v. *McFarlane* (230 N. Y. 400); *Daly* v. *Haight* (170 App. Div. 469; affd., 224 N. Y. 726), and *Wallace* v. *Jones* (195 id. 511); DAVIS, J., dissents, with an opinion, in which HINMAN, J., concurs.

DAVIS, J. (dissenting). In the year 1924 the village assessors were of the opinion that they were not capable of making an accurate assessment of some of the more valuable properties. By concerted action the assessors arranged with the board of trustees that an engineering firm skilled in such matters should be employed to assist in making a sound and scientific appraisal of such property as the basis of assessment. This was done and it appears that the aggregate assessment of property was increased more than $750,000 over that of the preceding year. Many owners of property seem to have accepted without question the increased assessment. It is apparent that the village revenues will be increased or the rate lowered by this policy, the justice of which is to a large extent unquestioned. The plaintiff is one whose assessment was increased. There was no special appropriation of funds for payment on a contract of this nature. The trustees ordered payment of about $2,000 to these engineers from the contingent fund, and an undetermined balance is still due.

I will assume, as found by the learned trial court, that the contract was illegal as having been made in excess of delegated powers. I will assume further that the action by plaintiff is governed by interest in the public welfare and is detached from any personal feeling because of his increased assessment. We have then, as it seems to me, the question only as to whether there has been such waste of the public funds that a court exercising equitable jurisdiction will be justified in intervening to restrain the payment of money for a beneficial purpose.

The action is entirely statutory. A taxpayer had no remedy at

common law such as is sought here. The legislation culminating in section 51 of the General Municipal Law is interesting in its origin and history. It was enacted because of corruption in municipal government and the lack of any legal remedy. (*Altschul* v. *Ludwig*, 216 N. Y. 459, 465.) In view of the causes that promoted this legislation, it is easy to understand the strict rule originally laid down by the courts and the somewhat drastic language used in stating the doctrine. If not only what was decided but what was said in opinions may now be deemed a fair statement of the law, there can be no question but the plaintiff is entitled to the remedy he seeks. But in my view of it, conditions have changed. Open, flagrant and unpunished corruption in municipal government has to a large extent disappeared. The powers exercised by municipal officers have been greatly augmented as municipal activities have widened in recent years. As the expenses of government have been increased there has been constant effort to make all property owners bear their fair share of such expense. There can be no doubt that the purpose of these village officials, acting under advice from the State Tax Commission, was to distribute more equally the burdens of taxation and make large owners of property pay their proportionate share.

Did the acts of the municipal authorities in paying the engineers for assistance in obtaining a more correct assessment of property, thereby equalizing tax burdens, constitute or promote actual waste, resulting in injury to the interests of taxpayers generally? The waste of municipal funds may be roughly divided into three classes: (1) Expenditures made unwisely and uneconomically by officers within the limits of their authority. The remedy for this is entirely political. (2) Disbursements made illegally by fraud, corruption and collusion. It was primarily the purpose of section 51 of the General Municipal Law and preceding statutes to give to the courts power to prevent such waste and to permit recovery of funds thus unlawfully expended. (3) Expenditures made without express authority by officers for useful or beneficial purposes in good faith, with a belief in their legality, where actual injury did not follow. This case falls within the latter class.

It has been said that "The term waste, as used in the act, includes every wrongful act of mismanagement of the property rights or interests of the municipality causing the loss or damage. The word 'injury' includes every wrong, everything that is not done rightfully." (*Ayers* v. *Lawrence*, 59 N. Y. 192, 197.)

Notwithstanding this stringent definition (made in 1874) in which "wrongful" and "illegal" appear to be synonymous, the courts in many instances since have not permitted such an action

to be maintained where the expenditure, though not strictly legal, was meritorious and benefit resulted; and where the waste was only technical and not harmful. (*Cobb* v. *Fellows*, 59 Hun, 627; *sub nom. Cobb* v. *Ramsdell*, 14 N. Y. Supp. 93; *Edwards* v. *Ford*, 22 App. Div. 277; *Lawson* v. *Lincoln*, 86 id. 217; affd., 178 N. Y. 636; *Shoemaker* v. *Buffalo Steam Roller Co.*, 165 App. Div. 836.) The rule, not always quite clear in the cases cited, found definite and vigorous expression in *Western N. Y. Water Co.* v. *City of Buffalo* (242 N. Y. 202). In that case it was said (p. 207): " The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers."

Under modern conditions the courts have recognized that it has never been the purpose of the law to permit officers, often serving without pay, to be harassed constantly by vexatious suits, based on some innocuous illegal act in an effort by an officious taxpayer to restrain their honest efforts to administer the government for the general benefit of the municipality and its citizens. City and village charters are rarely so clear in their language that mistaken views cannot be entertained of powers conferred. When they act in good faith seeking benefit to the community, there should be no absolute rule that municipal officers and those with whom they contract must interpret statutory powers at their peril of personal loss. Such a rule would inspire timidity and obstruct progress. Municipal officers should not be called to account in the courts for their acts on trivial, technical and fictitious complaints that delegated authority has been exceeded. There should be substance to the charges made and they must involve more than illegality, and include genuine waste causing actual injury to municipal and public interests. (*Western N. Y. Water Co.* v. *City of Buffalo, supra.*) " It is absurd to suppose that the Legislature, by the statute, intended to draw into the preventive jurisdiction in equity, at the instance of any taxpayer, any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property or a violation of public rights, or any injury to the interests of taxpayers, as such." (*Rogers* v. *O'Brien*, 153 N. Y. 357, 362.)

There is no claim here that the acts of the officials were tainted with fraud, collusion or dishonesty. There can be no doubt that the result of the enterprise attempted was beneficial, not wasteful. In fact, it has been found by the learned trial court that no actual waste was charged or established by plaintiff. It is perhaps sig-

nificant that no complaint has been voiced except by one who was personally aggrieved by an increased assessment. If such increase was not warranted by the facts, he has the remedy of review by certiorari, which we are told he has adopted. There are other penalties which may be visited upon officers " who disregard their responsibilities and transgress their limitations." (*Western N. Y. Water Co.* v. *City of Buffalo, supra,* 207.)

The action, as I have said, is statutory but the principles governing it are those prevailing in suits in equity. There is a certain discretion vested in the court when its action is invoked and " the equitable remedy of an injunction under the General Municipal Law is to be granted or withheld in accordance with the general principles which govern the exercise of equitable jurisdiction." (*Southern Leasing Co.* v. *Ludwig,* 217 N. Y. 100, 103.) The taxpayer bringing the action, if he desires injunctive relief, must show that besides being illegal the act threatened or in part accomplished is one calculated to imperil the public interests or cause public injury or mischief. (*Altschul* v. *Ludwig, supra,* 467.) The waste or injury must not be fictitious but real " to actuate a court of equity to interpose its discretionary and equitable powers of injunction." (*Brown* v. *Ward,* 218 App. Div. 643, 645.) This discretionary power will not, of course, extend to permit reckless, ill-advised acts which are also illegal, if actual waste in some substantial and appreciable manner results.

In this case I find no threat of injury or peril to the public interests. There is here no waste, corrupt and wanton. On the contrary, the purpose was honest and benefit resulted. Entertaining these views, I favor affirmance.

HINMAN, J., concurs.

Judgment reversed on the law and facts, with costs, and judgment rendered, with costs, in favor of plaintiff, adjudging that the contract with the defendants Barrows, Reeves and Pollard is illegal and void and restraining the defendants, members of the board of trustees of the village of Watkins and the president and treasurer of said village, from paying any funds of the village to the defendants Barrows, Reeves and Pollard, in consideration of services performed under said alleged contract, and restraining said Barrows, Reeves and Pollard from receiving any village funds in payment upon said contract.

The court disapproves of findings of fact numbered sixteen, eighteen and nineteen and all findings of fact included in the conclusions of law. The court makes the findings as found by the trial court at the request of the plaintiff; also that the defendants

Barrows, Reeves and Pollard demand payment of the balance due for services under the alleged contract and that payment thereof will be made unless restrained by the court; that plaintiff is entitled to judgment accordingly.