# H. W. ROKKER

## *v.*

## THE STATE OF ILLINOIS.

*Opinion filed March 20, 1903.*

1. COMMISSIONERS OF CONTRACTS—*power possessed by them is purely statutory.* The power exercised by the Commissioners of Contracts is purely statutory; and the law requires that every prerequisite to the exercise of such a power, as stated in the statute, must actually precede its exercise.

2. SAME—*power derived from R. S. Ch. 127.* The only power of the Commissioners of Contracts to bind the State in making contracts is derived from the law approved March 31, 1874, in force July 1, 1874, (Revised Statutes Ch. 127) naming certain State officials "Commissioners of Contracts" and defining their powers, said law being enacted in pursuance of Section 25, Art. 4, of the Constitution, which provides that "The General Assembly shall provide, by law, that the printing, binding the laws and journals, and all other printing ordered by the General Assembly, shall be let by contract, to the lowest responsible bidder."

3. SAME—*have power to cancel contracts obtained by fraud, conspiracy or other unlawful means.* The law of 1874 (R. S. Ch. 127) provides penalties for paying any person to refrain from bidding for such contracts and gives the Commissioners authority to cancel contracts, when in their opinion said contracts were obtained by fraud, conspiracy, or unlawful means.

4. SAME—*contracts may be made only after a public letting.* An indispensable condition precedent to the powers of the Commissioners of Contracts to contract is, that there shall be a public letting in which there is entire freedom of competition.

5. CONTRACTS—*to prevent competition in bidding. No rights accrue under.* No one can derive rights under a contract made for the purpose of preventing competition in bidding.

6. SAME—*power of Secretary of State to bind the State by contract.* The Secretary of State cannot bind the State by contracts where there is no express authority given him by statute to do so.

7. SAME—*State not liable on quantum meruit where Secretary of State lets printing contract without public bidding.* The State is not liable on a quantum meruit for State printing done where the work was done at the instance of the Secretary of State without being let to the lowest bidder. The Constit`    ` provides that such contracts should be let to the lowest bidder `.        ` makes all contracts made without express authority of law null and `.     ` and prohibits

the General Assembly from providing for payment of any claim arising out .of any such contract.

8. STATUTE OF LIMITATIONS—*unliquidated claims.* Unliquidated claims against the State shall be proved up and filed within two years from the time such claims may have arisen; and any claim not presented and proved up as above, and filed, shall be forever barred from payment by the State.

This claim is a survival of similar claims, founded on the same circumstances, prosecuted at intervals during the past fifteen years by H. W. Rokker before various tribunals, seeking recovery in varying amounts, but with uniform results.

If only a temporary relief from the prosecution of this claim is to be expected, a recital of its history would be as unnecessary as it is burdensome; yet with some hope that the claim may now be finally disposed of, a statement of its origin, its repeated rejection and persistent revival, may be useful to posterity by tending to discourage its further prosecution, at least before the Commission of Claims.

From the record now before the Commission, it appears that on the 13th day of September, 1886, the firm of H. W. Rokker & Co., secured a contract for State printing, said contract being executed, on the part of the State, by the Attorney General, Secretary of State, the State Treasurer and Auditor of Public Accounts, who are, *ex-officio,* Commissioners of State Contracts.

Under this contract, between October, 1886, and May 7, 1887, Rokker & Co. did work for the State, entitling them to $32,722, on which total payments of $24,000 were made by the State, leaving a balance, according to the claims of Rokker & Co. of $8,722.

On the 7th day of May, 1887, Rokker & Co. were notified that no further payments would be made under the contract; whereupon Rokker and his associates filed in the circuit court of Sangamon county, a petition praying a writ of *mandamus,* directed to the State officers (naming them) who are *ex-officio* Commissioners of State Contracts, commanding them as such Commissioners, to forthwith certify petitioner's said accounts, and com-

manding said Auditor to draw his warrant for the said balance claimed ($8,722), and commanding the State Treasurer to pay the same to the petitioners.

The defendants, by the Attorney General, in their answer to said petition, among other things set forth, that Henry W. Rokker and others named, including every individual and firm engaged in the printing business in the city of Springfield, had on or about September 6, 1886, (prior to the execution of said printing contract for the State) formed a combination for the purpose of making bids for the several classes of printing to be done for the State of Illinois for the two years, beginning October 1, 1886, in accordance with the terms of the advertisements for bids; which said combination was formed in the form of a partnership, and for the purpose of obtaining the contracts for said printing at a high rate, and for the further purpose of preventing the several members of said combination from competing with each other for the contracts for said printing; that in accordance with the terms of said combination, Rokker and his associates paid the six individuals and firms (named in said petition) engaged in the printing business in Springfield, the sum of $1,000 each in consideration of their becoming members of said combination and refraining from competing for said printing contracts, though several members of the combination did file bids at higher figures than the bid of Rokker. The collusion being unknown to the Commissioners of Contracts, they were deceived into believing that the bids were made in actual competition, while in fact all the bidders were interested in and parties to the bid of Rokker & Co.

The defendants in said *mandamus* proceedings (the State officials *ex-officio* Commissioners of Contracts) in their answer further averred that said combination was formed in violation of the laws of the State of Illinois; that the contracts relied upon for the recovery of the claim, were procured by unlawful means and by fraud upon the part of the petitioners (Rokker, et al) and through violation of the law; that the said contracts

were null and void, and of no binding force or effect upon the State or the Commissioners of State Contracts; and that no further payment ought to be made on account of said contracts. To which answer the petitioners (Rokker and his associates) demurred. The circuit court sustaining the demurrer—which finding was reversed on writ of error to the Supreme Court—the finding of the latter court (reported in the case of Dement, et al v. Rokker, et al, 126 Ill., 174) so far as now material or bearing on the claim now under consideration, being in substance as follows:

That the power exercised by the Commissioners of Contracts is purely statutory; and the law requires that every prerequisite to the exercise of such a power, as stated in the statute, must actually precede its exercise. "And it is manifest from the language employed, that it is intended by our constitution that this rule shall be rigidly applied to contracts assuming to bind the State, for it provides (Sec. 19, Article 4) that *'the General Assembly shall never    *  .*    *    authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made, without express authority of law, and all such unauthorized agreements or contracts shall be null and void.'*"

The only power of the Commissioners of Contracts to bind the State in making contracts is derived from the law approved March 31, 1874, in force July 1, 1874, (Revised Statutes Ch. 127) naming certain State officials "Commissioners of Contracts" and defining their powers—said law being enacted in pursuance of Section 25, Article 4, of the constitution which provides that "The General Assembly shall provide, by law, that the printing, binding the laws and journals, and all other printing ordered by the General Assembly, shall be let by contract, to the lowest responsible bidder."

Among other provisions, the law of 1874, above referred to, prescribes that "the furnishing of all fuel, stationery and printing paper for the use of the State,

and the copying, printing, binding and distributing the laws and journals, reports and all other printing, and distributing ordered by the General Assembly, shall be let by contract, to the lowest responsible bidder, in the manner hereinafter provided."

Said act also provides penalties for paying any person to refrain from bidding for such contracts, and gives the Commissioners authority to cancel contracts, when in their opinion said contracts were obtained by fraud, conspiracy, or unlawful means.

Continuing, the court say that only under the above constitutional and statutory authority, can the Commissioners make contracts binding on the State. "An indispensable condition precedent to their power to contract is, that there shall be a public letting in which there is entire freedom of competition." Penalties are imposed by the law for preventing bids, hence inferentially prohibiting the interference with free bidding; "Hence if that which is thus prohibited, was done, the letting was necessarily void, and a party cannot be entitled to enforce an agreement which he induced the adverse party to enter into only by doing that which subjected him to punishment by confinement in the penitentiary   *   *   *   .

All of the authorities are in substantial accord that no one can derive rights under a contract made for the purpose of preventing competition in bidding. Citing numerous authorities, page 198, volume 126, Ill. Rep.

Through this decision of the Supreme Court, (filed November 14, 1888) the first effort of claimant to secure the balance claimed under his contract being rendered unsuccessful, his next attempt at recovery was made by the introduction of bills at successive sessions of the General Assembly, as appears from the testimony of Mr. Rokker (in the claim prosecuted in 1896, before this Commission) who testified that he "brought his claim before the Assembly every session, and they failed to pass on it; waited to the end of the session, and it dropped out." Finally on May 4, 1895, claim was filed

with the Commission of Claims for balance due for printing done by claimant H. W. Rokker for the State, between October 1, 1886, and July 1, 1887, amounting to $13,609.58, together with interest thereon, at six per cent per annum, from July 1, 1887, this amount apparently included the balance ($8,722.11) claimed in the mandamus proceedings heretofore referred to, and also the balance ($4,497.47) claimed for work done by H. W. Rokker, after the abrogation of the contract with Commissioners of Contracts, by written notice of the Secretary of State.

In the opinion filed by the Commission, we notice the following: "It is conceded on the part of the claimant's attorneys, that the said contracts (with the Commissioners of Contracts) could not be defended, which relieves us of the necessity of considering their validity, * * * * " and further on, "claimant seeks to recover in this case upon the theory that the Secretary of State made a contract with him for the work, and agreed to pay him at the rate specified in the original contract. By what authority (the opinion continues) does the Secretary of State assume to make contracts of this kind? There is no such authority to be found in Chapter 127, nor in any other place in the statute, that we have been able to discover, and in the absence of such authority, any contract by the Secretary of State would be null and void, by the provisions of the constitution."

And continuing, "claimant further insists that, in the absence of authority in the Secretary of State to bind the State by express contract, the State would be liable on a *quantum meruit*. The law might imply a contract on the part of the State to pay what the work was reasonably worth, in some cases, but in view of the provisions of the constitution providing that such contracts should be let to the lowest bidder, and making all contracts made without express authority of law null and void, and prohibiting the General Assembly from providing for payment of any claim arising out of any such contract we do not think that position tenable.

If a contract should be implied from the acts or doings of any of the officers of the State, the objects intended to be accomplished by the framers of the constitution would be defeated."

The Commission further held that even if such a contract could be implied, the claim was barred by the statute of limitations. Being rejected by this Commission, the claim next appears in the form of a bill introduced in the Senate at the last lession of the General Assembly seeking an appropriation for $8,992.94, this being the balance claimed ($4,887, and interest) for work done, after the abrogation of the contract with the Commissioners of Contracts, on the understanding or agreement with the Secretary of State.

This bill having been referred to the committee on appropriations, was reported back to the Senate with a recommendation that it be referred to the Commission of Claims—which recommendation was carried out by the Senate, said bill being filed with the clerk of this Commission April 26, 1901; following which, on May 2, 1902, the claimant herein did file with the clerk of this Commission his claim for $13,609.58, and later, on leave granted, did on December 15, 1902, file his amended petition reducing the amount claimed, to the sum of $8,-992.94 "so as to conform to the Senate bill above referred to." On behalf of the State, pleas were filed by the Attorney General, denying plaintiff's right of recovery because of former adjudication by this Commission, in opinion filed at the August term, 1896, and for further pleas in that the causes of action did not accrue within two years next preceding the commencement of this proceeding, and that the claimant is barred from recovery, because he failed to file his claim with the Auditor within two years from the time it is alleged to have accrued.

We would feel constrained to reject this claim both on the ground that it was not filed within the time required by that statute, and because of the former finding of this Commission (August term, 1896) it being pro-

vided in the act creating the Commission (Sec. 7) that "In case said Commission shall reject any claim, so filed as aforesaid, upon the hearing thereof, such rejection shall conclude all parties thereto, unless said Commission shall, in their award thereon, otherwise direct."

Nor can we seriously consider the contention of claimant's counsel that the introduction of a bill in the General Assembly, and reference of the same to this Commission (as in this instance) takes it out of the requirement that "unliquidated claims against the State shall be proved up and filed within two years from the time such claims may have arisen; and any claim not presented and proved up as above, and filed, shall be forever barred from payment by the State." Laws 1847, p. 32.

To hold otherwise would involve the contention that the reference of a bill to this Commission had the effect of repealing a law now on the statute book.

However, even if the two year limitation were not in this case applicable, and had there been no former adjudication of this claim, we should still feel bound, under the law heretofore cited, to reject this claim.

If as claimed, work was done under a contract with or by direction of the Secretary of State, such action was wholly without authority of law, and had no binding effect on any one except possibly the Secretary himself; he certainly could not, in the face of the constitution and the statutory provisions hereinbefore quoted, bind the State; nor could the legislature properly make an appropriation for such an unauthorized payment in view of the constitutional provision (Sec. 19, Art. 4) that "the General Assembly shall never * * * authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void."

This language is sufficiently plain and emphatic to determine this Commission that even in the absence of other considerations and defenses, this claim has no foundation in law, and it is therefore rejected.